## Case No. 16,020.

### UNITED STATES v. PEARCE.

[2 McLean, 14.] [1]

Circuit Court, D. Michigan. Oct. Term. 1837.

POSTMASTERS — VACATION OF OFFICE — DETENTION OF LETTER—STEALING LETTER.

1. A postmaster, until the action of the postmaster general, does not vacate his office by remaining out of the neighborhood of the office.

2. If he keep the office by an assistant he is still responsible to the department and to individuals.

3. The 21st section of the postoffice law [4 Stat. 107] which prescribes a punishment for the detention of a letter or packet, refers to a letter or packet detained, before it reaches the place of destination.

[Cited in brief in Shirk v. People, 121 Ill. 63, 11 N. E. 888.]

4. The stealing or taking a letter, &c., as expressed in the same clause, in the 22d section, means a clandestine taking—not a taking

[1] [Reported by Hon. John McLean, Circuit Justice.]

through mistake, or with an innocent intent. It must be a taking with a criminal intent.

[Cited in U. S. v. Marselis, Case No. 15,- 725; Re Burkhardt, 33 Fed. 27.]

[Cited in Bloom v. City of Xenia, 32 Ohio St. 461.]

The district attorney appeared for plaintiff, and for defendant [Josiah Pearce].

OPINION OF THE COURT. This was an indictment under the postoffice law. It contained two counts as follows: "That the defendant was employed in the postoffice department of the United States, as an assistant to Lemuel Brown, the postmaster of the United States at the said township of Shiawassee, and did then and there unlawfully and forcibly detain from the said Lemuel Brown, postmaster, as aforesaid, two packages of letters with which he, the said Josiah Pearce, was then and there intrusted, as such assistant to the said Lemuel Brown, postmaster, as aforesaid, against the peace," &c. "And the jurors aforesaid, upon their oaths aforesaid, do further present that the said Josiah Pearce, to wit: on the 25th day of January, 1839, at the said township of Shiawassee, in the district aforesaid, unlawfully, fraudulently and deceitfully, did take from the mail of the United States three packages of letters, against the peace," &c. It was proved that Lemuel Brown was postmaster, and being about to leave the neighborhood for some months, he appointed Pearce, the defendant, assistant, the person who had acted as assistant in the office being unwell. After an absence of about three months Brown returned, and finding that the defendant had removed the office to his own house, and that there was complaint respecting the removal, he called on the defendant, at his house. in company with his former assistant whose appointment had not been revoked, and informed the defendant that he would relieve him from any further care of the office, and would take the papers, &c. Certain letters directed to the postmaster, received in his absence, and others received by the last mail, and the dead letters were handed to him; but the defendant refused to deliver the other letters, or pay over the money he had received for postage, and seizing a gun threatened to shoot the postmaster if he did not leave the house. The postmaster retired, and left the letters he had received with his former assistant, with instructions to act as his assistant. He did so. and handed out the letters in his possession as they were called for. The postmaster boarded at the house, with the assistant, at which the office was kept. In the course of two or three days after this, the defendant made oath before a justice of the peace that certain property had been stolen or fraudulently taken from him, specifying certain letters, &c., which were legally in his possession; on which a search warrant was issued. and the letters in the possession of the regular assistant taken from him, and

he was arrested and taken before a justice of the peace. On examination the assistant was released, but the letters were delivered over by the justice to the defendant, who continued for some days to open the mail and hand out letters, claiming a right so to act by virtue of his appointment. The postmaster then applied to the authority of the United States, instituted a prosecution against the defendant, and, through the instrumentality of the marshal, obtained possession of the postoffice, letters and papers.

The defendant offered evidence to prove that the postmaster had agreed to resign the office in his favor; that he had sold him the case in which the letters were deposited; that he had removed from Shiawassee, and, consequently, had, under the law and instructions of the department, vacated the office. And in support of this last position the postoffice act was read, which provides that no person shall hold the office of postmaster who does not reside at the place where the office is kept. But THE COURT held that this provision was directory to the postmaster general, and, indeed, was imperative on him; but that until he acted, the postmaster and his sureties were responsible to the department, and to individuals who should be injured by any neglect of duty in the office. That if the postmaster had intended to remove, about which fact there was contradictory evidence, the weight of the evidence being decidedly against the allegation that he had removed, it could constitute no justification to the defendant.

The evidence being closed the district attorney claimed a conviction of the defendant under that part of the 22d section of the postoffice act of 1825, which provides, that "if any person shall steal the mail, or shall steal, or take from, or out of, any mail, or from, or out of, any postoffice, any letter or packet therefrom, or from any postoffice, whether with or without the consent of the person having custody thereof, and shall open, embezzle or destroy, any such mail, letter or packet, the same containing any article of value, &c., shall, on conviction thereof, be imprisoned not less than two, nor exceeding ten years." And it is insisted that a conviction should be had, also, under the 21st section, for the detention of letters, on the first count in the indictment. The 21st section provides, that "if any person employed in any of the departments of the postoffice establishment, shall unlawfully detain, or open, any letter, packet or mail of letters, with which he shall be intrusted, or which shall have come into his possession, and which are intended to be conveyed by post," he shall, on conviction thereof, be punished, &c. The evidence does not show that the defendant detained any letters which came into his possession, "and which were intended to be forwarded by mail;" and it is the detention of such letters that is punishable under this clause of the statute. It applies to letters in transitu, and

which have not reached their place of destination; letters deposited in a postoffice to be forwarded, or handed to a mail carrier on his route, between postoffices, come within the provision if fraudulently detained. As there is no evidence against the defendant, showing the detention of such letters, he cannot be convicted on the first count in the indictment. More difficulty arises in giving a construction to the 22d section as applying to the facts proved. The language of the act is, if any person shall steal, or take from any mail or postoffice a letter, &c., shall be punished, &c. Now to give a literal construction to this language, the taking from the mail, or a postoffice, a letter, is punishable the same as for stealing it. This could not have been the intention of the legislature. A mere taking may be an innocent act, as if done through mistake, or, without any criminal intent; and we find in the latter part of the same section that, if any person shall take any letter or packet not containing any article of value, out of a postoffice, a very different punishment is inflicted. It could not have been the intention of the legislature to provide different penalties for the same act; and, consequently, the taking in the part of the section first cited, must either be limited to letters containing some article of value, or to a felonious taking. The taking of a letter which contains an article of value, is limited in this section to a taking with or without the consent of the person having the custody thereof, and where such letter is embezzled or destroyed. This provision does not embrace the class of offences provided for in the previous part of the section, which is stealing or taking. The design of the taking is shown by the embezzlement or destruction of the letter. But is a simple taking, without a felonious intent, punishable the same as for stealing? We think, when the statute is taken together, and its object and scope are considered, that such a construction cannot be sustained. To come within this provision of the statute, the taking must not only be unlawful but felonious; it must be a clandestine taking—such as would amount to larceny of personal property. This construction is not only justified by a different punishment being provided in the same section, for taking a letter from a postoffice, but by the first taking being placed in the same class and punished as for the stealing or the embezzlement of a letter.

The conduct of the defendant was highly reprehensible in refusing to surrender the office, on the demand of the postmaster; and still more so on his obtaining possession of the letters delivered to the postmaster, under the forms of law. This proceeding was an aggravation of his offence, and can only be palliated, in any degree, by the ignorance of those who were engaged in it. It was a prostitution of the forms of law to attain an illegal object. But unless the defendant in taking the steps he did take had a criminal intent, he is not guilty under the above sec-

tion. If he was honestly engaged in the prosecution of what he supposed to be a right, and his whole conduct evinced nothing more than a disposition to hold the office and fairly to discharge its duties, he was not guilty of a felonious taking within the meaning of the statute. It is the intent, in all instances, which constitutes the crime, and which is ascertained by the acts of the offender. In many instances the act itself being a crime of great enormity, the whole burden of proving an innocent intent is devolved on the party accused. In this case enough appears in the evidence to show that the defendant did not intend to steal the mail, or any letters or packets from the postoffice. Of this, however, the jury can judge.

Verdict not guilty.