UNITED STATES *v.* VITELLI & SON (No. 1084).[1]

1. SECTION 21, ACT OF 1874.

There is no limitation fixed by section 21, act of 1874, except a limitation which arises only in the absence of fraud and in the absence of protest. So far as the section contains implied authority for reliquidation, it imports the right to reliquidate in case of fraud and in case of protest after the lapse of one year equally with the right so to reliquidate within the period of a year.

2. RELIQUIDATION—FRAUD—BURDEN OF PROOF.

The collector found the existence of fraud as a fact. It was not incumbent on the Government in the first instance to introduce evidence tending to support the correctness of the reliquidation by the collector on the ground of fraud. In this case, as in others, the burden was placed on the importer to show by proof that the collector's action was erroneous.

United States Court of Customs Appeals, February 10, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7418 (T. D. 33115). [Reversed.]

*William L. Wemple,* Assistant Attorney General, for the United States.
*Albert M. Yuzzolino* for appellees.
*James M. Beck* and *Joseph W. Carroll, amici curiæ.*

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

In 1905, 1906, and 1907, 14 separate entries were made by the importers of chestnuts and garlic. Liquidation was had by the col-

[1] Reported in T. D. 34194 (26 Treas. Dec., 282).

lector and the duties imposed paid. On July 8, 1912, an order was made by the collector stating that satisfactory evidence having been produced showing that the returns of weights on the importations in question were false and fraudulent, the liquidations were declared void and a reliquidation directed on the basis of the corrected returns made by the United States weigher. The reliquidation was had and protest was filed with the collector and an appeal taken to the Board of General Appraisers, which sustained the protest on the ground that in the hearing had before the board the Government had not supported the claim of fraud by proof, and that it was incumbent upon the collector to establish this fraud by competent evidence, and that a presumption of fraud could not arise from the official action of the collector in reliquidating the entries. From this decision the Government took an appeal to this court.

Subsequently to the hearing a brief has been filed by permission of counsel intervening *amici curiæ*, and the contention is made in this brief that while the Board of General Appraisers reached the correct conclusion, it was in error in assuming that the collector, in reliquidating after the lapse of a year, acted in the discharge of a right granted or duty imposed by law, and that no reliquidation can be had after the lapse of one year.

The board construed section 21 of the act of 1874 as authorizing a reliquidation at any time during one year from the time of entry, and as also authorizing a reliquidation after the lapse of one year in case of fraud or in case of a pending protest.

This section provides:

That whenever * * * duties upon any imported goods, wares, and merchandise shall have been liquidated and paid, and such goods, wares, and merchandise shall have been delivered to the owner * * * such entry and passage free of duty and such settlement of duty shall, after the expiration of one year from the time of entry, in the absence of fraud and in the absence of protest by the owner, importer, agent, or consignee, be final and conclusive upon all parties.

This section is to be construed in connection with subsection 14 of the act of August 5, 1909, which provides:

That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within 15 days after but not before such ascertainment and liquidation of duties, as well as in cases of merchandise entered in bond as for consumption, or within 15 days after the payment of such fees, charges, and exactions, if dissatisfied with such decision, give notice in writing to the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon. * * *

This section was enacted in lieu of section 2931 of the Revised Statutes, which, as it relates to the question here involved, was in substantially the same terms. That section provided that—

On the entry of any * * * merchandise, the decision of the collector of customs at the port of importation and entry, as to the rate and amount of duties to be paid * * * on such merchandise, and the dutiable costs and charges thereon, shall be final and conclusive against all persons interested therein, unless the owner * * * importer, consignee, or agent of the merchandise * * * shall, within 10 days after the ascertainment and liquidation of the duties by the proper officers of the customs * * * give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein, distinctly and specifically, the grounds of his objection thereto, and shall, within 30 days after the date of such ascertainment and liquidation, appeal therefrom to the Secretary of the Treasury.

These two provisions were first considered by the courts in 1879, and in an opinion by Blatchford, Circuit Judge, in United States *v.* Phelps *et al.* (17 Blatch., 321; Fed. Cas., No. 16039), it was said:

By section 2931 of the Revised Statutes the decision of the collector, in liquidating duties, as to the amount of duties on imported goods, is made final and conclusive against all persons interested in such goods, unless notice in writing of dissatisfaction with such decision is given to the collector, by the importer, within 10 days after the liquidation, and unless within 30 days after the liquidation there is an appeal by the importer from the liquidation to the Secretary of the Treasury. Such liquidation is not made final and conclusive as against the United States. There is nothing in the section which forbids a reliquidation or a new decision by the collector, even after the payment of all the duties fixed by a proper liquidation, or even after the refunding of money deposited beyond the amount of duties so fixed; or which forbids a new decision by the collector as to the law on the same facts, or a new decision as to facts, based on additional or new or different facts. This view is confirmed by the enactment of section 21 of the act of June 22, 1874 (18 Stat. 190), which is as follows:

Whenever any goods, wares, and merchandise shall have been entered and passed free of duty, and whenever duties upon any imported goods, wares, and merchandise shall have been delivered to the owner, importer, agent, or consignee, such entry and passage free of duty and such settlement of duties shall, after the expiration of one year from the time of entry, in the absence of fraud and in the absence of protest by the owner, importer, agent, or consignee, be final and conclusive upon all parties.

This provision was in force when the transactions in this case took place. It applies to the United States. The expression "all parties" includes the United States. By section 2931 of the Revised Statutes, there was no limitation imposed on the power of the collector to reliquidate, when such reliquidation was in the interest of the Government. But by section 21 of the act of 1874 a limitation is imposed on such power, so that, after the entry of goods, and after the liquidation and payment of duties on them, and after the delivery of the goods to the importer, such settlement of duties, if there be no fraud and no protest by the importer, is, after one year from the entry, final and conclusive, even as respects the Government. In the present case, the suit was brought before the one year expired. The collector, therefore, had power to make the reliquidation of July 20, 1878. * * *

This case has not only been frequently followed, but the paragraph providing as to cases in which the first liquidation of the collector shall be final has been twice reenacted and is now embodied in subsection 14 above quoted.

The cases which recognize and follow the case of United States v. Phelps are some of them referred to in Hawley & Letzerich v. United States (3 Ct. Cust. Appls., 456; T. D. 33037), and are collected in the case *In re* Forbes & Wallace (T. D. 23655) there cited. See also Louisville Pillow Co. *v.* United States (144 Fed., 386) and United States v. R. R. Co. (151 Fed., 545.)

The effect of these decisions, and particularly in view of the reenactment of the provisions now embodied in subsection 14, is to establish the rule that the first liquidation of the collector is not conclusive upon the United States; that in the absence of limitation a reliquidation may be had at any time; and that the only limitation is contained in section 21 of the act of June 22, 1874, which by implication also recognizes the right to reliquidate after the first liquidation is had.

The cases in which the question had arisen were cases in which the liquidation occurred within the one year's period fixed by the statute of 1874. But it is obvious that the power to reliquidate is precisely the same in any one of the three instances mentioned in that section. The limitation is that reliquidation shall not occur after the expiration of one year from the time of entry, in the absence of fraud, and in the absence of protest by the owner, importer, agent, or consignee. So if a reliquidation may be had at any time within one year, by the same authority if fraud exists or if a protest is had, a reliquidation may take place after the year. Or to state it in another way, there is no limitation fixed by section 21 except a limitation which arises *only* in the absence of fraud and in the absence of protest. So far as section 21 contains an implied authority for reliquidation, it is equally as forceful in importing the right to reliquidate in case of fraud and in the case of protest after the lapse of one year as it is in importing the right to so reliquidate within the period of one year.

This brings us then to a consideration of the question whether when a reliquidation is had after one year it is incumbent upon the Government in case of an appeal to establish that there was in fact fraud before a reliquidation can be justified. That the right to recover these duties against imported merchandise vested in the Government upon the importation is too well settled to require extended discussion. Upon this point see the cases cited, *supra*. And that the power of the collector to reliquidate existed prior to the act of June 22, 1874, is determined by cases cited. See particularly United States v. Calhoun (184 Fed., 501).

In this case the collector reports that—

Evidence was produced to show that the returns of the United States weighers were false and fraudulent, hence the liquidations were declared void and reliquidations were made on the true weights, as found on the amended returns of the United States weigher.

The briefs of the importers and *amici curiæ* concede that if the collector proceeded within the authority conferred upon him by statute his acts carry with them the presumption of correctness, but they urge that the collector has no authority to find that fraud exists before he can reliquidate, and hence when his reliquidation is challenged by protest, as in this case, that it is incumbent upon the Government at the hearing before the board to go ahead and establish the existence of the fraud. In other words, they treat the case much as if the appeal here were an appeal from the finding of fraud rather than the reliquidation. Upon this theory, however, until fraud were established it is manifest there could be no reliquidation whatever, because if the collector is without power to find fraud he can in no case reliquidate on that ground, unless and until it is otherwise found, for which procedure the statute expressly or impliedly makes no provision. In this view there is really no reliquidation here to be challenged by protest.

The conduct of the importers, however, negatives this theory, because they have paid the reliquidated duties under protest, thereby taking the position that there has been a reliquidation, and are now prosecuting a protest for the purpose of having the same set aside and the moneys refunded.

We think it can not be said that this differs from other cases of an appeal from a liquidation of the collector in this respect. The very authority to liquidate, which resides in the collector alone, implies an authority to ascertain certain facts—for instance, to determine whether the goods were imported, whether entitled to free entry or dutiable, each of which as well as other findings are necessarily implied in the liquidating act and all of which, if protested against, may be challenged upon the hearing of the protest. The entire subject matter of reliquidation is within his jurisdiction, and the power to determine the existence of the facts necessary to warrant the same inheres in him. Whether he will reliquidate or not is a matter in which he must exercise his discretion. It will not be presumed that he will without investigation wantonly and without cause exercise the power, but it will be presumed, when the same has been exercised, that it was warranted, and unless appeal is given from such decision, as it is in this case, such action is conclusive and by the statute is made so unless appealed from.

That this may involve the proving of a negative on the part of the importers does not affect the question, for in Arthur *v.* Unkart (96 U. S., 118), a leading authority upon the proposition that the acts of public officers acting within the scope of their authority are presumed to be correct, it is clearly recognized and cases are cited to the proposition that the support of a negative allegation often devolves upon parties who challenge the correctness of such official action.

It must always be kept in mind that in this case the statute makes no provision for the finding by any tribunal other than the collector of the existence of facts which warrant his action, and that in this case he has not, as is ingeniously argued, simply *claimed* or *asserted* that fraud exists, but, on the other hand, he has, as he must have done, *found* the existence of fraud. The position taken by both importers and *amici curiæ* here, if adopted, really results in a judicial annihilation of the settled doctrine of the law that the acts of officers of the law upon a subject of which they have jurisdiction are presumed to be correct.

This case is not the institution of a suit by the importers in a court of common-law jurisdiction, but is a special proceeding authorized by statute for the purpose of challenging the correctness of a decision of the collector, which decision is declared final unless appealed from. The importers have no constitutional right to review this decision in the courts. The right to do so is a favor granted to them by the United States.

As was said in the case of Arnson *v.* Murphy (115 U. S., 579, 584):

The right of action does not exist independently of the statute, but is conferred by it. * * * But the statute sets out with declaring that the decision of the collector shall be final and conclusive against all persons interested unless certain things are done. The mere exaction of the duties is, necessarily, the decision of the collector, and on this being shown in any suit it stands as conclusive till the plaintiff shows the proper steps to avoid it.

But, if it be assumed that the ordinary rules of pleading observed in civil causes may be invoked here, it should be noted that the statute, section 21, *supra,* excepts from the operation of its limiting provisions the following cases: First, where the year has not elapsed from the payment of the original liquidated duties and the delivery of the merchandise; second, where there is fraud; and, third, where protest has been made. In other words, in the presence of any one of these conditions the bar of the statute does not apply, and their nonexistence is necessary to permit the liquidation to be final and conclusive upon all parties.

To obtain the benefit of the provision for finality of the first liquidation, in such a statute, it seems that any person who seeks to impeach a reliquidation must aver and prove the nonexistence of the statutory exceptions. This rule is fully set forth and discussed in Lewis's Sutherland Statutory Construction (vol. 2, sec. 351). See also Arnson *v.* Murphy, *supra.*

The importers here evidently recognized its applicability, because their protest expressly denies the existence of fraud.

The question may be somewhat novel, as it is unusual to require one to prove the absence of fraud which may be imputed to him. The existence of fraud, however, is only incidental to the question

as to the correctness of the reliquidation, and upon that issue the importers meet and must overcome the presumption that it is correct. Tested by the rule of pleading above mentioned the importers have failed to bring themselves within the same by failing to prove their averment that there was no fraud.

There is also another view of the case not discussed by counsel which ought not to be disregarded or overlooked. The original and amended weigher's returns are a part of the files, were before the board, and are before this court. These amended returns and the reliquidation thereon relate only to garlic and chestnuts, while some of the entries, 14 in number, cover in addition other merchandise. Upon these corrected weigher's returns are written statements to the effect that the greater part of the reliquidated merchandise had been traced from the importers to various persons who had weighed the same and kept a record of such weights, with which the weights shown in the corrected returns substantially correspond; that in some instances the merchandise had been paid for upon the basis of such weights; and that in at least one case the importers had billed the goods at 46,253 pounds, which was some 3,500 pounds greater than the weight thereof as originally returned by the weigher. We have examined some of the files relating to all these 14 entries, and therefrom it appears that the corrected returns increase the weights above those originally returned in amounts varying from 1,000 to 16,000 pounds in each of such entries.

We doubt if it can be said that these facts are not evidence of fraud, which, unexplained, would seem to import a deliberate and, for a time at least, successful attempt to pass many thousand pounds of merchandise through the customs without paying duty thereon. While it has been, as we understand, uniformly held that the weigher's return is conclusive upon the collector and the Board of General Appraisers where he has acted within the rules of law prescribing his duties, yet if he has fraudulently underweighed merchandise he has not so acted, but has violated not only the law but his statutory oath of office, and his weighing becomes a nullity. For an authority reviewing decisions on this subject see G. A. 6620 (T. D. 28249). It is also there held that where the weight is void or illegal in a particular case the actual weight for dutiable purposes may be determined by evidence *aliunde.*

In the case at bar the first weights have by the proper customs officers been found fraudulent and void, and amended certificates of weight with indorsements showing how the same were ascertained have been filed in the case and submitted to the collector. The collector has satisfied himself, as he says, upon *evidence produced* that the first weights were fraudulent and has reliquidated upon the basis of the weigher's amended returns. These returns and

amended certificates are a part of the case and would seem to be sufficient, if it were necessary to show fraud in the first instance, to support the judgment of reliquidation. Thereby importers were put upon notice as to the particular fraud found. They can not claim ignorance, uncertainty, or embarrassment as to what the issue was, and they, better than anyone else, should have knowledge of the facts necessary to meet the same. They were not entitled to a hearing before the collector upon this question, but could get their day in court by appealing from the reliquidation to the board, as they have done.

We are of opinion, for the reasons hereinbefore set forth, that it was not incumbent upon the Government in the first instance to introduce evidence tending to support the correctness of the reliquidation of the collector, but that in this as in other cases of reliquidation where the collector has acted within his authority it is the duty of the importer to go ahead and by proof overcome the presumed correctness of the collector's action. Until this is done it is prima facie correct and must be affirmed.

The judgment of the Board of General Appraisers is *reversed*.