## ZUCCA *v.* UNITED STATES (No. 1878).[1]

1. CONSTRUCTION, SECTION 21, ACT OF JUNE 22, 1874 (18 STAT., 186)—"ABSENCE OF FRAUD"—BURDEN OF PROOF.

Section 21, act of June 22, 1874 (18 Stat., 186) provides that liquidation shall be final and conclusive after a year from entry "in the absence of fraud." Following Vitelli *v.* United States (250 U. S., 355; T. D. 38179), when reliquidation is made under such circumstances, the United States must show fraud.

2. CONSTRUCTION, SECTION 21, ACT OF JUNE 22, 1874 (18 STAT., 186)—"FRAUD."

The words "in the absence of fraud and in the absence of protest by the owner importer, agent, or consignee" (sec. 21, act of June 22, 1874 (18 Stat., 186)), do not restrict the *fraud* to the owner, importer, agent, or consignee.

3. EVIDENCE, WEIGHT, AND SUFFICIENCY—FORMER TRIAL.

The acquittal of Antonio Zucca upon an indictment charging him with having knowingly participated in fraudulent entries by Zucca & Co. does not show that such entries were not fraudulent.

4. EVIDENCE—INTRODUCTION OF PART OF RECORD.

The appellant having placed in evidence part of the record of another trial, the court may examine the whole record.

5. RES ADJUDICATA.

It may be taken as settled law that, while a criminal judgment of acquittal may be pleaded as *res adjudicata* in another criminal proceeding or *quasi* criminal proceeding such as to enforce a forfeiture or penalty, it is not an estoppel in a civil proceeding.

6. COLLECTOR'S POWER TO TAKE UNOFFICIAL EVIDENCE AS TO WEIGHTS.

Where it appears that the weights returned by the United States weighers in a series of entries were fraudulent, there is no doubt that the collector may ascertain the true weights by taking unofficial evidence.

7. RELIQUIDATION FOR FRAUD, NATURE OF.

A reliquidation more than a year after entry on the ground of fraud is not a criminal or *quasi* criminal proceeding, nor does it seek to enforce a penalty or work a forfeiture. It is only an assessment of duties properly due and, as such, purely civil in its nature.

## United States Court of Customs Appeals, April 13, 1920.

APPEAL from Board of United States General Appraisers, Abstract 41347.

[Reversed.]

*Finkler & McEntire* for appellant
*Bert Hanson,* Assistant Attorney General, for the United States.

---

[1] T. D. 38399 (38 Treas. Dec., 387).

[Oral argument Dec. 19, 1919, by Mr. Finkler and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

This case was first heard by the Board of General Appraisers in October, 1912. Such proceedings were had before the board that judgment was not therein rendered until October, 1917. That judgment being adverse to the importer, the latter duly prayed for a review in this court.

One of the questions raised is the right of the collector to reliquidate for fraud under the provisions of section 21 of the act of June 22, 1874, and the effect of such reliquidation, if made.

A like question was involved in United States v. Vitelli & Son (5 Ct. Cust. Appls., 151; T. D. 34194), and Vitelli & Son v. United States (7 Ct. Cust. Appls., 243; T. D. 36544), and the instant case was apparently suspended before the board to await the result of a review of our judgment in the last mentioned Vitelli case by the Supreme Court of the United States

That court upon consideration was of opinion that our judgment in the Vitelli case was erroneous and in disposing of the matter said:

It follows that the judgment of the Court of Customs Appeals must be and it is reversed and the case remanded to the Board of General Appraisers for further proceedings not inconsistent with this opinion.

See United States v. Vitelli (39 U. S. Sup. Ct. Rep., 544; T. D. 38179).

Were the only question here identical with that in the Vitelli case, this case, following the judgment of the Supreme Court should of course in like manner be remanded to the Board of General Appraisers, and that is one of importer's claims. The Government asks that the case be remanded for a new trial.

There is, however, another question raised by this appeal not involved in the Vitelli cases, namely, the effect of the verdict of the jury and the judgment of acquittal thereon in certain criminal proceedings against the appellant here, which verdict and judgment the importer has offered in evidence and which he contends are so far res adjudicata or stare decisis on the issue of fraud here that the judgment of the Board of General Appraisers should be reversed and the protest sustained.

All the pertinent facts on that issue are set forth in the concurring opinion of De Vries, judge, filed herewith.

Upon those facts we are satisfied that the importer's contention last above mentioned ought not to be sustained, and refer to the concurring opinion for a presentation of the views that lead to such a conclusion.

The result is that the judgment of the Board of General Appraisers is reversed and the case remanded for further proceedings according to law.

## CONCURRING OPINION.

DE VRIES, Judge: Between January 17, 1906, and November 20, 1907, inclusive, Zucca & Co., of New York, entered at the port of New York by 31 separate and distinct entries the quantities of imported cheese covered by this appeal. In due course and approximately at the dates of the respective entries the collector of customs at that port liquidated the same. Likewise, in due course, the merchandise went into consumption.

On November 2, 1910, a United States grand jury for that jurisdiction returned to the United States Circuit Court for the Southern District of New York an indictment of Antonio Zucca, a member of the firm of Zucca & Co., this appellant, for the entry of merchandise at false weights and measures. The indictment contained sixteen counts covering a number of the 31 aforesaid entries. At the first trial of said defendant upon said indictment a jury, on March 10, 1911, disagreed. On the second trial a jury, on April 14, 1911, returned a verdict of not guilty. At the trial two former assistant United States weighers testified that after information was given them of the invoice and entered values they had made false returns of the weights of cheese imported and entered by this importer, to correspond with the said invoice and entered weights, for which acts they received pay. Testimony of city weigher was further adduced showing that the invoice and entered weights of this cheese were materially less than the actual weights. The court instructed the jury in part as follows:

The United States Revised Statutes provide that every person who, by any means, knowingly effects an entry of goods at less than their true weight shall be guilty of certain punishment. You see, that is a very simple statement of the crime. It contains in all four elements. First, that the defendant must enter goods into the United States. Second, that he must enter them at less than their true weight. Third, that there must be some means by which he does that—I will come to that later. Fourth *(this for our purpose is particularly important)*, that he shall do these acts knowingly. Of course, if he does not know that he is entering or procuring the entries of goods at less than their true weights it would be shocking to our sense of justice that he should be treated as a criminal. The statute does not suggest that any such thing as that should happen. Now those are the four elements of the crime with which this defendant has been charged. (Italics ours.)

And, after reviewing the testimony relating to the variances in weight, the court further instructed:

But I assume for the sake of the charge that you have found that the invoice and also that the weighers do not correctly state the true weight of the cheese, then you have the final element of the crime. Did the defendant know about this? The Government presents no direct proof of that whatever. No one ever heard the defendant say that and no one has shown that he directly knew that this was going on.

The indictment was had and instructions given under the provisions of section 9 of the customs administrative act of 1890, as amended in 1909, pertinently, as follows:

SEC. 9. That if any consignor, seller, owner, importer, consignee, agent, or other person or persons, shall enter or introduce, or attempt to enter or introduce, into the

commerce of the United States any imported merchandise by means of any fraudulent or false invoice, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, * * * such merchandise, or the value thereof, to be recovered from such person or persons, shall be forfeited, * * * and such person or persons shall, upon conviction, be fined for each offense a sum not exceeding five thousand dollars, or be imprisoned for a time not exceeding two years, or both, in the discretion of the court.

That statutory denunciation of crime includes many persons who may be participants in the same crime. United States v. Mescall (215 U. S., 26). Thereunder it is possible that the evidence might establish beyond a reasonable doubt a fraudulent entry of goods and the guilt of one or more of such participants, and though the fraudulent entry be established, not connect others indicted separately or jointly for the same crime. Witness, that for the fraud of making the false weights herein charged, an assistant weigher testified that he had made them for pay and had pleaded guilty to an indictment for said acts, nevertheless the importer was acquitted of *knowingly* having participated therein. While, therefore, fraud in the case might be clearly established or admitted, that is perfectly consistent with the acquittal of one or more or all of the defendants whose *guilty knowledge* was not sufficiently shown. The court so instructed the jury, and the finding by the jury of this defendant not guilty *was not, therefore, a necessary finding that there was no fraud committed.* In fact, the instructions of the court clearly intimated to the jury that there was fraud proven, but further instructed that, *assuming the same a fact proven in the case,* they must *also* be satisfied beyond a reasonable doubt of the particular defendant's *guilty knowledge thereof.* A verdict of not guilty therefore was not necessarily equivalent to a finding against fraud in the case as shown by this record.

Wherefore on July 12, 1911, the collector at that port reliquidated each and all of said entries. The collector's return, dated December 27, 1911, to the Board of United States General Appraisers states:

*In a suit against one of the members of the firm of Zucca & Co.,* the protestants, certain United States assistant weighers testified to having made fraudulent returns on the goods covered by the entries named in the protest. Following these admissions the United States weigher submitted corrected amended returns, with the recommendation that the original returns be declared null and void, as they were false and fraudulent. The limitation of one year from entry prescribed in section 21, act of June 22, 1874, for the reliquidation of an entry does not apply where there is fraud; hence this office accepted the amended return as representing the true weight, and in the reliquidation of the entries assessed duties accordingly. Note the amended returns attached to each entry. (Italics ours.) Wm. Loeb, jr., collector.

The reference of the collector *"in a suit against one of the members of the firm of Zucca & Co., the protestants"* (italics ours), was no doubt to the testimony in the criminal case, *supra.* At least that is the only "suit" and evidence therein to which this court, the protestant having placed in evidence the indictment and judgment, by reason

thereof, has, under the well-settled rules of law hereinafter quoted, a right to examine and advert to in decision. That this court has the right to so examine the evidence and all the proceedings in that case, the judgment having been pleaded herein, to determine exactly what issues were passed upon by the jury is well-settled law. (See cases, *infra*.) The collector, the record of said case before him, as he was bound in good conscience and in due observance of official duty to do, proceeded to action. His powers in this status are well defined and plenary.

It is significant that, commencing with the customs administrative act of 1890 (26 Stat. L., 131), section 13, long after the enactment of section 2890, Revised Statutes, *supra*, Congress, immediately after legislating finality as to the appraiser's report, provided as to the remaining ascertainments necessary to liquidation, "*the collector*, or the person acting as such shall *ascertain, fix*, and liquidate the rate *and amount* of the duties," etc. Certainly in case no weigher was provided by law, or where he could not perform his duties because of the absence of the goods or for other cause, this power is broad enough to authorize the collector to ascertain the weight in any satisfactory manner. Here there was no *valid* weigher's return, the return made having been void because fraudulent.

This view is confirmed by section 16 of the customs administrative act (26 Stat. L., 131), giving collectors the power *unlimited in time* to cite the "owner, importer, agent, consignee, *or other person*," examine him under oath and "require the production of any letters, accounts, or invoices relating to said merchandise," "may require such testimony to be reduced to writing, and when so taken it shall be filed in the office of the collector and *preserved for use* or reference until the *final* decision *of the collector or said board of appraisers* * * * respecting the valuation *or classification* of said merchandise." In a decision of great merit by Judge Hand, Southern District of New York, it was held that the provision empowered the collector to "order an examination *in aid* of a possible *re*liquidation."

The collector's action and the record before him is typified by any one of the entries. As officially descriptive we select at random entry No. 160687, covering, and entering as invoiced, an invoice of 120 cases of cheese invoiced at gross kg. 8,127 (17,916 pounds); tare 3,719 pounds; net kg. 6,440 (14,198 pounds). Attached to the entry is the following order: "Reliquidate upon basis of United States weigher's return dated June 29, 1911, attached, in view of fraud disclosed. E. J. Allendorf" (deputy collector). The original fraudulent weigher's certificate recites 120 cases of cheese, gross 17,842 pounds; tare 4,040 pounds; net 13,802 pounds. Thereupon is indorsed:

"120 cases of cheese. Canceled, declared void. See amended return attached as per collector's order June 27, 1911. Thos. D.

Hyatt, U. S. W." (weigher).  The amended return or certificate of
the United States weigher "attached" reads:

120 cases cheese.  Gross 20,173; tare 4,040; net 16,133.  The original liquidation
of this entry was made on a false and fraudulent return by the assistant United States
weigher.  Upon investigation it was found that 42 cases were weighed by the city
weigher employed by the importer and returned as weighing 7,113 pounds gross.  20
cases in addition to the above 42 cases were sold by the importer to P. Petri and billed
as weighing 3,308 pounds gross, making a total weight for 62 cases of 10,421 pounds
gross.  It is therefore recommended that the original return of weight, and the liqui-
dation based thereon, be declared null and void; and that the entry be reliquidated
on the basis of the weight gross returned by the city weighers and the Petri bill com-
bined and the tare of the United States Assistant Weigher Quinn, that being the
highest tare ascertainable.  Thos. D. Hyatt, United States weigher.  June 29, 1911.

Wherefrom it is clear that the true weights were approximately
2,000 pounds more than the invoice weights, resulting in a difference
in duties of approximately $120.

Reliquidation followed accordingly, whereupon the collector by
the return above quoted transmitted the papers to the Board of
General Appraisers.  Therein the collector declared that the reliqui-
dation was prompted by the evidence in the "suit" aforesaid wherein
assistant weighers swore they had made fraudulent returns of the
weights of the particular merchandise, adverting to the evidence in
the suit of United States v. Zucca, the judgment and indictment in
which is held in evidence, wherefore, for the reasons hereinafter stated,
this court is warranted in examining the evidence and proceedings
in that suit.  We find that record contains such evidence and shows
such weigher's returns were testified by said assistant weighers to have
been made fraudulently to correspond approximately with the weight
stated in the invoices as given such weighers by a third party.  The
collector further returned that he had ascertained that the true
weights were much greater than the entered and invoiced weights
of said merchandise, from which he concluded and found fraud in
the entry thereof and accordingly ordered reliquidation.  The evi-
dence upon which the collector found the returned true weights of
said merchandise, and upon which as a basis reliquidation was made,
was by the collector returned to the board, thereby, under the man-
date of Congress, was made evidence before the board.

In conformity with the foregoing the collector of customs at the
port of New York retained in his possession $3,269.52, money of
Zucca & Co., in the possession of the collector, being a sufficient
amount to meet the reliquidations stated.

In order to secure a mandate of the Board of General Appraisers
directing said collector of customs to pay over to Zucca & Co. said
retained sum of $3,269.52, the importers elected to proceed to pro-
test therefor under the terms of the customs administrative act of
1890, as amended.  Accordingly they duly filed protest in the words
and figures as follows:

NEW YORK CITY, *July 27, 1911.*

Hon. WILLIAM LOEB, Jr.,
    *Collector of Customs, Port of New York.*

SIR: We hereby protest against the reliquidation and assessment of duty upon cheese, etc., imported in the vessels and on the dates named in the schedule annexed hereto and marked "Exhibit A" upon the following grounds:

I. That the reliquidation was made without warrant of law and in violation of section 21 of the act of June 22, 1874 (18 Stat., 190), for the following reasons:

A. That said reliquidation of each and every of the importations mentioned and set forth in said schedule A was made more than one year from the time of entry of said importations, respectively, and after the expiration of more than one year after the importation, entry, passage, and delivery of all of said goods, and after liquidation and payment of duties thereon.

B. That there was no fraud in connection with any of said importations, and that there was no protest by the owner, importer, agent, or consignee or any other person pending at the respective times of the liquidation of said importations, respectively.

C. That by reason of the grounds set forth in A and B above, the entry and settlement of duties upon each and all of said importations became, prior to and was at the time of the reliquidation of July 12, 1911, final and conclusive upon all parties.

D. That the liquidation or reliquidation of the entries in question made by the collector prior to the reliquidation of July 12, 1911, is final and conclusive upon all parties.

II. That the issue of fraud in connection with importations of merchandise was finally and conclusively determined in favor of the defendant in a certain criminal prosecution by the United States of America against Antonio Zucca by the return of a verdict of acquittal, and the entry of judgment thereon in the United States Circuit Court for the Southern District of New York, on the 14th day of April, 1911, and that the said Antonio Zucca was at all of the times of the importations covered by the respective entries set forth in said schedule A, the sole proprietor and the sole person doing business as Zucca & Co., the protestant herein, and that by reason of said acquittal and judgment, any question or issue of fraud against the said Antonio Zucca or Zucca & Co. is *res adjudicata.*

III. That the collector is legally bound and concluded by the weights returned by the weigher in his original special return of weights on each and all of said importations.

IV. That there is no warrant or authority at law to justify the cancellation of the original weights as noted upon the weigher's return attached to the entries and upon the entries themselves.

V. That the collector has no power or authority under any provision of law to order the cancellation of the weigher's return or to cause the weigher to make a return of weight not based upon the actual weighing of the goods by an official United States weigher; and that each and every of the said reliquidations was made upon weights other than those returned after actual weighing of the goods by any United States weigher.

VI. That the weights assumed by the Government for the purpose of reliquidation are erroneous and speculative, and that no lawful reliquidation of duties could at any event and irrespective of the foregoing objections be based upon such weights; and that there is no provision or warrant of law authorizing or justifying the computation of duty for the purpose of reliquidation upon any of the weights taken by the Government as a basis of the reliquidation of the respective entries herein.

VII. That in making some of the said reliquidations of July 12, 1911, the computations are based upon alleged weights of only a portion of the respective importations, and that the alleged entire weight of said importations respectively was computed upon the basis of said portions thereof. That there is no provision or authority of law warranting such procedure in the determination of weight of cases of merchandise varying in weight.

VIII. That the amended return of weights for the reliquidation of each and all of said importations fails to comply with and is in violation of article 1484 of the customs regulations of 1908.

We therefore protest against the payment of any and all of the duties not legally chargeable upon said importation, and more specifically of duties in excess of the amount of duties as originally liquidated and paid; and hereby reserve all questions of law or fact that may arise.

Respectfully, yours,                                        ZUCCA & Co.,
                                                        By ANTONIO ZUCCA,
                                Sole Proprietor, 25 West Broadway, New York City.

All the papers in the case having been duly transmitted to the Board of General Appraisers, including the invoices and entries showing the invoiced and entered weights of the imported merchandise, together with the original weigher's returns and the amended weigher's returns, disclosing great and systematic differences in the entered and true weights, and including the direction of the deputy collector to reliquidate on account of the fraud made apparent by these systematic differences in weights, and also including the return of the collector to the Board of General Appraisers approving the same and certifying thereto, and declaring his action was also based upon the testimony in a suit wherein assistant weighers testified that they had falsely certified the weights of these importations, the case was duly set for trial before the board.

The record as thus made up in substance consisted of the aforesaid official return of the collector reliquidating the entries upon the stated ground that there was fraud in the case, accompanied by the evidence of such fraud.

The protest of the importers consisted of their unverified allegations.

Let it be noted that of these were, "B. That there was no fraud in connection with any of said importations * * *"; and "V. * * * that each and every of the said reliquidations was made upon weights other than those returned after actual weighing of the goods by any United States weigher"; and "VI. That the weights assumed by the Government for the purpose of reliquidation are erroneous and speculative ' * * *"; and "VII. That in making some of the said reliquidations of July 12, 1911, the computations are based upon alleged weights of only a portion of the respective importations, and that the alleged entire weight of said importations respectively was computed upon the basis of portions thereof. * * *"

There was pending at the same time before the board the parallel protest of F. Vitelli & Son.

The question principally discussed at the first hearing of that protest was whether the burden was on the protestant to prove the existence of fraud. The board ruled that the burden was on the Government. The Government offered no evidence and the protest

was sustained (T. D. 33115, G. A. 7418; January 21, 1913). On appeal the board's decision was reversed, this court holding that the burden was on the importer (United States *v.* Vitelli, 5 Ct. Cust. Appls., 151; February 10, 1914). The importer failing to sustain the burden of proof upon the new trial, the board overruled the protest (Abstract 36340, T. D. 34742; August 21, 1914). On appeal the board's decision was affirmed (Vitelli *v.* United States, 7 Ct. Cust. Appls., 243; May 29, 1916). On a writ of certiorari the Supreme Court reversed the decision of this court and remanded the case to the Board of General Appraisers for further proceedings (Vitelli *v.* United States, 250 U. S., 355, T. D. 38179; June 6, 1919).

The instant protest and Vitelli's protest had come on for hearing together, October 30, 1912. At the conclusion of discussion relative to the burden of proof the trial was continued to a later date with permission to counsel to file briefs. On December 5, 1912, the board decided that the burden of proof was on the Government. The trial under the protest was not proceeded with until June 19, 1917. Seemingly the proceeding had been held in abeyance awaiting the outcome of the Vitelli litigation.

Antonio Zucca was called as a witness for protestant. He testified, without contradiction, that he was then "the only owner of the firm" of Zucca & Co. and that he had "been a member of that firm" from 25 to 30 years. *He did not testify as to who were the other members in 1906 and 1907.* He also testified that he had been "indicted on or about the 26th of November, 1910, for alleged fraudulent entries." There was offered and received in evidence, over the objection of the Government, "the indictment and acquittal."

The indictment, here in evidence, contained 16 counts. Each count charged, in effect, that on the date therein named Antonio Zucca did *knowingly effect* and aid in effecting an entry of certain dutiable merchandise then imported by him from a foreign country, said entry being effected by him at less than the true net weight of said merchandise, whereas, in fact, the true net weight of said merchandise was greater, *as he then well knew.*

At none of the hearings did the Government offer evidence.

At the close of the hearing on June 19, 1917, the case was submitted for decision. Citing the decision of this court in the Vitelli cases holding the burden of proof rested upon the importer, the board overruled the protest, and the case comes here for review.

Two contentions are here made by appellant; the first is that the burden of proof is upon the Government, *in the state of this record,* to prove fraud.

In both of the Vitelli decisions, United States *v.* Vitelli & Son (5 Ct. Cust. Appls., 151; T. D. 34194), and Vitelli & Son *v.* United States

(7 Ct. Cust. Appls., 243; T. D. 36544), this court pointed out and reviewed at length the evidence of fraud in the record as thus certified by the collector to the board, and further pointed out that the matters so certified were by Congress *made evidence before the board.* An exhaustive review of the authorities to that date, we think, without exception supported the view that such a record established *prima facie* proof of fraud in the case, and rested the burden of disproving the same upon the protestant who had alleged that there was no fraud in the case and in detail alleged wherein and why there was no fraud in the case. A long and consistent line of authorities was also reviewed supporting the view that the protestant must prove the allegations of his protest. That seemed to have been the uniform course of decision up to that time. Of course, had the action been by complaint in a United States District Court, wherein the record would be made up by complaint or declaration and answer, the collector's return, proceedings and evidence secured by him finding no legal lodgment in that record, the unvaried law of a century by statute and judicial decision would have placed the burden upon the Government asserting fraud to make a *prima facie* case thereof. But the appellants by a statutory proceeding initiated this proceeding by their protest *alleging absence of fraud,* and the record before the board consisted in part of the return of all the proceedings and evidence taken before the collector, which, irrespective of its evidentiary character under the ordinary rules of evidence was not by the board or this court, but by Congress in its sovereign legislative capacity, declared *should be evidence in the case.* The board, under direction of this court, treated it as such and sufficient to put the importer upon his proofs. The principle of decision is not only found in the numerous cases relied upon and quoted, but is expressly prescribed by Congress in forfeiture cases, *which are penal in their nature and though the claimant is attended by the presumption of innocence,* requires him, *if the trial court deems a prima facie case is made by the record,* to prove himself innocent of the fraud working the forfeiture. Section 20, customs administrative act as amended in 1909 and in effect at time of trial of this case, reads:

SEC. 20. That in all suits or informations brought where any seizure has been made pursuant to any act providing for or regulating the collection of duties on imports or tonnage, if the property is claimed by any person, the burden of proof shall lie upon such claimant: *Provided,* That probable cause is shown for such prosecution, to be judged of by the court.

Appellants urge as their second and alternative claim that "The verdict of the jury and the judgment of acquittal thereon in the criminal proceedings make the question of fraud *res adjudicata.*" Amplified it is thus expressed in their brief:

As to the entries included in the indictment, the claim is that the question of fraud is *res adjudicata,* in view of the indictment and acquittal.

As to the other entries which were also reliquidated (page 4 of record) but were not included in the indictment and are included in the protest, we claim that the protest should be sustained on the theory of *stare decisis*, for the same questions involved therein were involved in the trial and acquittal of the importer on the entries covered by the indictment, and the entries are all more or less of one series.

The doctrine of *stare decisis* is plainly not here applicable. That doctrine is a rule of decision relating to the law of the case rather than to the facts as here claimed. It has not the remotest bearing as here involved.

There are many reasons why the plea of *res adjudicata* does not here avail. Appellant's claim is patently fatally defective in so many particulars that we pass the question as to a variance in parties. The criminal proceeding was by the United States *v.* Antonio Zucca. This proceeding is between the United States and Zucca & *Co.* We find it here unnecessary to discuss the point *as presented by this record*.

The indictment covered but 16 of the entries. There are 31 covered by the protest involved in this appeal. Obviously even should the plea of *res adjudicata* be well taken as to the entries covered by the indictment it does not avail as to the remaining 15 entries covered by this appeal.

The rule is fundamental that there must not alone be identity of parties in order that a judgment may operate as an estoppel but also identity as to the cause of action. United States *v.* Parker (120 U. S., 89). That is to say, the issue pending and that recited must be identical.

It is elementary that if from the judgment in a case there is uncertainty as to what really was decided, resort may be had to the proceedings and opinion of the court to throw light upon the subject. Burthe *v.* Denis (133 U. S., 514); Hornbuckle *v.* Stafford (111 U. S., 389); Baker *v.* Cummings (181 U. S., 117); Last Chance Mining Co. *v.* Tyler Mining Co. (157 U. S., 683, 688, et seq.).

In National Foundry, etc.; *v.* Oconto Water Supply Co. (183 U. S., 216), the court at page 234 said that if the face of the final decree did not show exactly what issues were decided by the court "we will resort to the means of elucidation just referred to, viz, the pleadings and opinions rendered, in order to ascertain who were the opposing parties, what were the issues joined between them and the matters finally determined in the cause." Yates *v.* Utica Bank (206 U. S., 181).

In Washington Gas Light Co. *v.* District of Columbia (161 U. S., 316, 329), the Supreme Court speaking to this subject said:

The elementary rule is that for the purpose of ascertaining the subject matter of a controversy, and fixing the scope of the thing adjudged, the entire record, including the testimony offered in the suit, may be examined. Russell *v.* Place, 94 U. S., 606, 609, 610; Cromwell *v.* County of Sac, 94 U. S., 351, 355, 356; Lewis *v.* Ocean Navigation & Pier Co., 125 N. Y., 341, 348; Littleton *v.* Richardson, 34 N. H., 179, 188; Freeman on Judgments, section 273, and authorities there cited.

It is meet to conclude discussion of the effect of a judgment pleaded in estoppel and the effect thereof, to quote from the Supreme Court in Russell *v.* Place (94 U. S., 606, 610):

According to Coke, an estoppel must "be certain to every intent;" and if upon the face of a record anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence. See Aiken *v.* Peck, 22 Vt. 260, and Hooker *v.* Hubbard, 102 Mass. 245.

Advertence to the evidence recited and the opinion or instructions of the court in United States *v.* Antonio Zucca, hereinbefore recited, makes it obvious that this judgment was not necessarily based upon a finding against fraud in the case, but that such might be and probably *was* established, the judgment of acquittal having been predicated upon a lack of proof of the willful knowledge thereof by Zucca.

Moreover, this court, after careful review of the authorities, is satisfied and reiterates the doctrine of *res adjudicata* upon this point as stated in Vitelli & Son *v.* United States (7 Ct. Cust. Appls., 243, 267; T. D. 36544):

The first and elemental requirement of that doctrine is, "there must be identity, not only of the parties in the two actions but also as to the character, capacity, or quality in which they are litigants." United States *v.* California & Oregon Land Co. (192 U. S., 355); Washington, Alexandria & Georgetown Steam-Packet Co. *v.* Sickles et al. (24 How., 65 U. S., 333); Gaines *v.* Hennen (24 How., 65 U. S., 553); Reynolds *v.* Stockton (140 U. S., 254); Werlein *v.* New Orleans (177 U. S., 390).

There was no such mutuality of character or capacity. The protestants were F. Vitelli & Son *v.* United States. The records offered were in the case of United States *v.* Joseph Vitelli. Even were it competent, no proof of their identity was offered or suggested. Upon principle mutuality of causes of action may well be questioned where, as here, the Government in the criminal case was required to prove its case beyond a reasonable doubt, while in the civil proceeding it would prevail upon proof by a preponderance of the testimony.

Were these requirements present, however, that such a judgment was *res adjudicata* may well be doubted. Those acquittals at most no more than established the absence of fraud *on the part of the importers.* Whatever may be the powers of the collector in obviously exceptional cases of fraud, they are nowhere here limited to cases of fraud upon the part of the importers alone, and, for want of that limitation, extend to all cases of *the absence of fraud in the particular case,* whether by the importers or others, whereby the Government is deprived of its just revenues. The statute is not one of criminal or punitive limitation, but one upon the powers of the Government to collect revenues fraudulently withheld by whomsoever perpetrated. So it has uniformly been regarded by the courts. "There is no allegation that there was any fraud *in the case.*" Beard *v.* Porter (124 U. S., 437, 442).

The fraud in question is that mentioned in section 21 of the act of June 22, 1874 (18 Stat. L., 186). The language there employed concludes the question. It is—

"After the expiration of one year from the time of entry, *in the absence* of fraud and *in the absence* of protest *by the owner, importer, agent, or consignee.*"

Repetition of the words "in the absence of" can only be justified and given effect by a congressional purpose to separate the two provisions and their respective modi-

fications. The only useful purpose in that particular was to confine all the modifications (by the owner, importer, agent, or consignee) to the latter and withhold them from the former predication. The confinement of the protest to that of an "owner, importer, agent, or consignee" without so limiting "fraud" indicates a congressional purpose not to so limit "fraud." Stephens *v.* Cherokee Nation (174 U. S., 445). Section 9 of the customs administrative act declares forfeiture of goods for acts of the owner, consignee, and "other persons." The Supreme Court has held a weigher one of such persons. United States *v.* Mescall (215 U. S., 26). That in certain cases "good faith and innocence constitute no defense," and that "the absence of any fraudulent intent by the consignee, the owner, or the agent" in certain actions to recover additional duties was held and the authorities reviewed by the Circuit Court of Appeals for the Eighth Circuit in United States *v.* Bishop (125 Fed., 181).

Counsel for appellants in their behalf rely upon Coffey *v.* United States (116 U. S., 427). That claim is stated by counsel, as follows:

In the case of Coffey *v.* United States (116 U. S., 443), the Supreme Court held that on a judgment and acquittal a forfeiture based on the same acts covered by the indictment and acquittal would not be sustained, and it stated further (p. 443):

"Yet, where an issue raised as to the existence of the act or fact denounced has been tried in a criminal proceeding, instituted by the United States, and a judgment of acquittal has been rendered in favor of a particular person, that judgment is conclusive in favor of such person, on the subsequent trial of a suit in rem by the United States, where, as against him, the existence of the same act or fact is the matter in issue, as a cause for the forfeiture of the property prosecuted in such suit in rem. It is urged as a reason for not allowing such effect to the judgment that the acquittal in the criminal case may have taken place because of the rule requiring guilt to be proved beyond a reasonable doubt, and that, on the same evidence, on the question of preponderance of proof, there might be a verdict for the United States in the suit in rem. Nevertheless, the fact or act has been put in issue and determined against the United States, and all that is imposed by the statute, as a consequence of guilt, is a punishment therefor. There could be no new trial of the criminal prosecution after the acquittal in it, and a subsequent trial of the civil suit amounts to substantially the same thing, with a difference only in the consequences following a judgment adverse to the claimant."

It will here be noted that the mere fact that in one case the proof must be beyond a reasonable doubt, and in the other upon a preponderence of evidence, makes no difference, as the fact or act of alleged fraud has been put in issue and determined against the United States.

It makes no difference whether as a result of fraud for which the defendant was acquitted a forfeiture action might have been instituted or an action for any other sum of money, the basis of the charge is fraud, and this, of course, is *res adjudicata*.

But in later decisions the Supreme Court expressly pointed out that the conclusion of counsel necessary to be of avail here was not the logical sequence of the *Coffey* case. In fact, it may be conceded that the inference was deducible from the language of that opinion, but the Supreme Court in more recent cases has refused to follow that deduction. The court has taken pains to distinguish and limit that case and to point out that the proceeding in the *Coffey* case was one to *enforce a penalty* by forfeiture proceedings and criminal in its nature.

The court in Boyd *v*. United States (116 U. S., 616, 634), speaking of the ancestral statute of section 9 of the customs administrative act, thus interpreted the *Coffey* case:

These are the penalties affixed to the criminal acts, the forfeiture sought by this suit being one of them. If an indictment had been presented against the claimants, upon conviction the forfeiture of the goods could have been included in the judgment. If the Government prosecutor elects to waive an indictment, and to file a civil information against the claimants—that is, civil in form—can he by this device take from the proceedings its criminal aspect and deprive the claimants of their immunities as citizens, and extort from them a production of their private papers, or, as an alternative, a confession of guilt? This can not be. *The information, though technically a civil proceeding, is in substance and effect a criminal one.* As showing the close relation between the civil and criminal proceedings on the same statute in such cases, we may refer to the recent case of Coffey *v*. The United States, ante, 436, in which we decided that an acquittal on a criminal information was a good plea in bar to a civil information for the forfeiture of goods arising upon the same acts. As, therefore, *suits for penalties and forfeitures incurred by the commission of offenses against the law, are of this quasi-criminal nature,* we think that they are within the reason of criminal proceedings for all the purposes of the fourth amendment of the Constitution, and of that portion of the fifth amendment which declares that no person shall be compelled in any criminal case to be a witness against himself. (Italics ours.)

In United States *v*. Zucker (161 U. S., 475, 478) the court again adverted to the *Coffey* case in limitation of its doctrine in these words:

The case is an authority for the proposition that if the present defendants had been proceeded against criminally on account of the same acts and facts that must be shown in order to sustain this action under the statute of 1890, and had been acquitted, the verdict and judgment of acquittal would have barred a subsequent civil proceeding, based on the same acts and facts, *and instituted to enforce a forfeiture or to recover the value of the merchandise forfeited.* (Italics ours.)

In Stone *v*. United States (167 U. S., 178, 188) the court again reviewed the *Coffey* case, and after confining its doctrine to forfeiture and penalty proceedings which it characterized as criminal in their nature, gave as one of the reasons why a criminal judgment should not be pleaded in a civil proceeding, placing much emphasis thereupon, the difference in the degree of proof required in the two proceedings. The court said:

We are of opinion that the present case is not covered by the decision in Coffey *v*. United States. The judgment in that case was placed distinctly upon the ground that the facts ascertained in the criminal case, as between the United States and the claimant, could not be "again litigated between them, *as the basis of any statutory punishment* denounced as a consequence of the existence of the facts." In the *Coffey* case there was no claim of the United States to property, except as the result of forfeiture. In support of its conclusion, the court referred to United States *v*. McKee, 4 Dill. 128, observing that the decision in that case was put on the ground "that the defendant could not be twice *punished* for the same crime, and that the former conviction and judgment was a bar to the suit *for the penalty.*"

The present action is unlike that against Coffey. This is not a suit to recover a penalty, to impose a punishment, or to declare a forfeiture. The only relief sought here is a judgment for the value of property wrongfully converted by the defendant.

The proceeding by libel against Coffey, although civil in form, was penal in its nature, because it sought to have an adjudication of the forfeiture of his property for acts prohibited. It was, as we have seen, a case in which a punishment, denounced by statute, was sought to be inflicted as a consequence of the existence of facts that were in issue and had been finally determined against the United States in a criminal proceeding.

\*          \*          \*          \*          \*          \*          \*

In the present case the action against Stone is purely civil. It depends entirely upon the ownership of certain personal property. *The rule established in Coffey's case can have no application in a civil case not involving any question of criminal intent or of forfeiture for prohibited acts, but turning wholly upon an issue as to the ownership of property.* In the criminal case the Government sought to punish a criminal offense, while in the civil case it only seeks in its capacity as owner of property, illegally converted, to recover its value. *In the criminal case his acquittal may have been due to the fact that the Government failed to show, beyond a reasonable doubt, the existence of some fact essential to establish the offense charged, while the same evidence in a civil action brought to recover the value of the property illegally converted might have been sufficient to entitle the Government to a verdict.* Not only was a greater degree of proof requisite to support the indictment than is sufficient to sustain a civil action; but an essential fact had to be proved in the criminal case, which was not necessary to be proved in the present suit. In order to convict the defendant upon the indictment for unlawfully, willfully, and feloniously cutting and removing timber from lands of the United States, it was necessary to prove a criminal intent on his part, or, at least, that he knew the timber to be the property of the United States. Regina *v.* Cohen, 8 Cox C. C. 41; Regina *v.* James, 8 Car. & P. 131; United States *v.* Pearce, 2 McLean, 14; Cutter *v.* State, 36 N. J. Law, 125, 126. But the present action for the conversion of the timber would be supported by proof that it was in fact the property of the United States, whether the defendant knew that fact or not. Woodenware Co. *v.* United States, 106 U. S. 432. An honest mistake of the defendant as to his title in the property would be a defense to the indictment but not to the civil action. Broom's Leg.-Max. (5th ed.) 366, 367. It can not be said that any fact was conclusively established in the criminal case, except that the defendant was not guilty of the public offense with which he was charged. We can not agree that the failure or inability of the United States to prove in the criminal case that the defendant had been guilty of a crime, either forfeited its right of property in the timber or its right in this civil action, upon a preponderance of proof, to recover the value of such property. (Italics ours.)

In Chantango *v.* Abaroa (218 U. S., 476, 481), the court reiterated with approval the above language of the *Stone* case as to the difference of degree in proof affording a ground why a criminal or *quasi* criminal judgment was not a good plea *res adjudicata* in a civil proceeding and thus confined the *Coffey* case:

Neither will identity of parties always operate to make a judgment in a criminal action admissible in evidence in a civil action. There must be identity of issue. Thus in Stone *v.* United States, 167 U. S. 178, 187, Stone was sued by the United States to recover the value of timber alleged to have been cut by him from public lands. He had been theretofore indicted, tried, and acquitted for unlawfully cutting the same timber from the public lands, and plead this judgment as a bar to a suit for civil liability. This was held to be no defense, and *Coffey's case*, 116 U. S. 436, distinguished as having been placed upon the ground "that the facts ascertained in a criminal case, as between the United States and the claimant," could not be again litigated between them, as the basis of any *statutory punishment* denounced as a consequence of the existence of the facts.

It may therefore be taken as settled law that, while a criminal judgment of acquittal may be pleaded *res adjudicata* in another criminal proceeding or *quasi* criminal proceeding such as to enforce a forfeiture or penalty, such is not, for the reasons stated by this and the Supreme Court in the cases quoted *supra*, an estoppel in a civil proceeding.

We, therefore, come to the question, is this proceeding commenced by appellants by filing these protests a criminal or *quasi* criminal proceeding, to enforce a penalty or work a forfeiture, or is it a proceeding in the nature of a civil action?

It is important to note that as shown by the papers these reliquidations by the collector simply and only laid duty at the prescribed rate (6 cents per pound) upon the imported weights of cheese theretofore not taxed. No penalties, no added duties, no forfeiture was declared or assessed by the collector. Nor were any duties added to those weights of cheese previously assessed. The collector no doubt being advised of the rulings hereinafter reviewed prudently and carefully laid the regular duty of 6 cents per pound upon those weights of cheese previously imported, and by false weights concealed from him and introduced into the commerce of the country without the payment of any duty. This protest proceeding, therefore, seeks a mandate to recover not a penalty levied, nor goods forfeited, but money held for the regular duties upon dutiable merchandise shown to have been introduced into the country without payment of any duties whatsoever. The proceeding, therefore, is purely civil in its nature and conceding the judgment of acquittal of Antonio Zucca in the criminal proceeding, sufficient in all other particulars, being an acquittal in a criminal action, it is not sufficient as a plea in estoppel in this civil action or proceeding.

The decision of the board, for the foregoing reasons, should be reversed and the case remanded for a new trial by the board.

While the opinion of the Supreme Court in the Vitelli case calls for further proceedings by a "competent" tribunal, this court so regards the board. The determination of the presence or absence of fraud has never been deemed by Congress an extraordinary function. Its determination, even final determination, is vested in numerous minor and administrative officers.

Congress by the act of May 27, 1908 (35 Stat. L., 406, sec. 31, Part 1, Public Laws), vested in the Board of General Appraisers all the investigatory powers at least of United States circuit courts. The act provides:

SEC. 31. That all of the general appraisers of merchandise heretofore or hereafter appointed under the authority of said act shall hold their office during good behavior but may, after due hearing, be re-

moved by the President for the following causes, and no other: Neglect of duty, malfeasance in office, or inefficiency.

That hereafter the salary of each of the general appraisers of merchandise shall be at the rate of $9,000 per annum.

That the said boards of general appraisers and the members thereof shall have and possess all the powers of a circuit court of the United States in preserving order, compelling the attendance of witnesses, and the production of evidence, and in punishing for contempt.

SEC. 4. That all laws and parts of laws inconsistent with this act are hereby repealed.

SEC. 5. That this act shall take effect and be in force from and after its passage.

Approved, May 27, 1908.

Their long and intimate acquaintance with customs procedure and methods of evading the same argues them more "competent" for this determination than perhaps any other tribunal of the Government. I therefore concur in the foregoing opinion.