### UNITED STATES v. O'NEILL et al.

(Circuit Court of Appeals, Third Circuit. May 2, 1904.)

#### No. 19.

1. CUSTOMS DUTIES—LIABILITY OF CONSIGNEES—UNAUTHORIZED SHIPMENT—MERCHANDISE NOT "IMPORTED."

Certain merchants ordered for importation a quantity of merchandise of a kind not subject to duty. In response to the order a shipment was consigned to them of an article of a different character, which was subject to a high rate of duty, and which they refused to accept or to make themselves responsible for in any way. *Held* that there was no colorable authority for the shipment of the merchandise, and that the consignees should not be considered as having "imported" the merchandise within the meaning of section 1, Customs Administrative Act of June 10, 1890, c. 407, 26 Stat. 131, 1 Supp. Rev. St. 744 [U. S. Comp. St. 1901. p. 1886], providing that all merchandise "imported" into the United States shall for the purposes of the act "be deemed and held to be the property of the person to whom the merchandise may be consigned."

2. SAME—CONSIGNMENT WITHOUT CONSENT OF CONSIGNEE.

Where merchandise is shipped to parties in the United States, which is of a different character from that ordered, it is a consignment made without the consent of the consignees, within the meaning of article 1231, Customs Regulations 1899, prescribing that, when the proceeds from the sale of unclaimed merchandise are not sufficient to pay the duties and other charges thereon, "the consignees are liable for such duties, unless it be shown that the consignment was made without their consent."

3. Same—Unauthorized Shipment—Obligation of Consignee to Make Entry.

Where merchandise is shipped to parties in the United States without their authority, they are under no obligation, in order to free themselves from liability for duty, to make entry of the merchandise or to take possession of it for any purpose.

In Error to the District Court of the United States for the Eastern District of Pennsylvania.

For decision below, see 122 Fed. 547. Note U. S. v. Bishop, 125 Fed. 181, 60 C. C. A. 123.

Wm. M. Stewart and James B. Holland, for plaintiff in error.
John G. Johnson, for defendants in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This was an action of assumpsit, brought by the United States to recover a balance of customs duties, amounting to $722.72, alleged to be due by the firm of O'Neill Bros., of the city of Philadelphia. The case was tried before McPherson, J., without a jury, in accordance with the provisions of section 639, Rev. St. After hearing and argument, the learned judge directed judgment to be entered in favor of the defendant upon his findings of fact and law, as set out in his opinion, of which the following is a copy:

"This suit is brought to recover a balance of tariff duties for which the defendants are alleged to be liable. The case having been tried by the court without a jury, I find the following facts:

"The defendants are merchants in the city of Philadelphia, and as part of their business buy and sell cotton waste and woolen waste. Shortly before October 1, 1899, they received a sample of cotton waste from the Kingston Hosiery Company, doing business in the Province of Ontario, and ordered fifty bales to correspond with the sample. On October 1st the hosiery company delivered to the Grand Trunk Railway fifty bales of waste consigned to 'J. D. Lewis, Suspension Bridge, Messrs. O'Neill Brothers, Philadelphia.' This bill of lading was indorsed by J. D. Lewis: 'Deliver to J. McI. McNiven.' When the goods arrived at Suspension Bridge, McNiven entered them for consumption, declaring, among other things, that 'to the best of my knowledge and belief, O'Neill Brothers, Philadelphia, Pa. are the owners of these goods, wares, and merchandise mentioned in the annexed entry.' The bales were afterwards examined by a customs officer, who discovered that four bales were nearly all wool, and forty-six bales were cotton and wool mixed, although mostly cotton. Cotton waste is admitted free of duty, while woolen waste, or woolen and cotton mixed, is charged with a duty of ten cents a pound. The net weight of these bales being eight thousand five hundred pounds, a duty of $850 was accordingly imposed and payment was demanded from the defendants. To this they replied that their order had been given upon a sample that contained nothing but pure cotton, and that if the bales which were shipped contained wool the hosiery company had sent something that they had not ordered, and therefore that they did not hold themselves responsible for any duty that might be collectible upon the shipment. The goods were stored by the customs authorities for more than a year, and were then sold to enforce payment of the duty, producing the net sum of $127.28, thus leaving an unpaid balance of $722.72, for which amount the present suit is brought. So far as appears from the evidence, neither Lewis nor McNiven was an agent of the defendants, either general or special, and neither had any authority, express or implied, to enter the goods for consumption. The defendants declined to accept the bales, and paid no further attention to the shipment. They had not ordered the goods that were

sent, and very properly refused to receive them or to make themselves in any way responsible for their care or custody.

"Upon these facts, it seems to me that the defendants are not liable for the balance of the duty. It is true that the act of 1890, 1 Supp. Rev. St. 744 [U. S. Comp. St. 1901, p. 1886]. declares that 'all merchandise imported into the United States shall, for the purpose of. this act, be deemed and held to be the property of the person to whom the merchandise may be consigned.' It is also true that the bill of lading shows that the Grand Trunk Railway named O'Neill Brothers as the ultimate consignees of the merchandise. But under the other facts, I do not think that the act should be so construed as to embrace the present defendants. They did not import this merchandise into the United States in the proper sense of that word. They ordered an entirely different article from the hosiery company, and, if that article had been furnished, no doubt they would have been liable for the duty with which the goods might have been properly chargeable. But I am unable to see upon what ground they can be charged for duty upon an article which they neither bought, nor accepted, nor entered for consumption. The entry at the custom house was not made by the defendants' agents, and they cannot be held responsible for McNiven's unauthorized act. They disavowed it as soon as they knew of it, and consistently refused to pay any further attention to the goods. The government argues that they should have given the bond provided by law and have withdrawn the goods for exportation to the hosiery company, but I cannot agree that any such obligation was imposed upon the defendants. On the contrary, as it seems to me, to have taken possession of the goods for any purpose, might have been construed by the hosiery company to be an acceptance, and, at all events, would have exposed the defendants to the hazard of a lawsuit upon that ground.

"In my opinion, they were fully justified in the course they followed. The opinion of the Attorney General in 5 Treas. Dec. 244 (Dec. No. 23,606), does not in any respect affect the question now being considered. There the consignee received and entered the very tobaccos he had ordered, but because the wrappers and fillers were improperly packed together, he was obliged to pay a higher duty than would have been otherwise chargeable. He had 'imported' the goods and the law fixed him with liability. Here, however, the defendants did not order these goods to be sent into the United States, did not enter them, and have never exercised any act of ownership over them. In a word, the defendants did not 'import' the goods and never intended to import them.

"I conclude, therefore, that the defendants are not liable for the amount sued for, and that judgment should be entered in their favor."

The plaintiff thereupon brought the case to this court on a writ of error to the District Court. The questions raised by the assignments of error, as stated by the District Attorney, are: (1) Were O'Neill Bros., under the facts as found by the court, the consignees of the 50 bales of waste in question? (2) If O'Neill Bros. were the consignees, was "the consignment made to them without their consent," within the meaning of those words, as used in article 1231 of the customs regulations?

The facts are found by the court and are not in dispute. Whatever may be said in answer to the first question, as above stated, we are clearly of opinion that if O'Neill Bros. were the consignees, the consignment was made to them without their consent, within the meaning of those words, as used in article 1231 of the customs regulations. That article provides that, "when the proceeds of any sale of goods remaining unclaimed more than a year, are insufficient to pay the charges and duties, the consignees are liable for such duties, unless it be shown that the consignment was made without their consent." This rule of the Secretary of the Treasury, for the practical admin-

istration of the customs laws in this respect, promulgated under authority conferred by law, is in accord with justice and common sense. The facts, as found by the court below, clearly show that this consignment of wool waste and mixed cotton and wool, was made without the authority, express or implied, of the defendants in error. The goods were not sent by the consignors in response to an order for the same. What defendants in error ordered, was cotton waste, an article to be imported free of duty. The consignment here in question was of wool waste and mixed cotton and wool, dutiable at 10 cents per pound. Such a shipment is as clearly made without the consent of the consignee, as if no order for a different article had been sent. The facts found do not support the assertion, that the defendants in error "ordered fifty bales of waste and they were forwarded fifty bales of waste." The order of one article is not colorable authority for the shipment of an entirely different article, especially where the articles ordered are on the free list, and those shipped are dutiable. In such case, the party to whom the shipment is made, is not bound, in order to free himself from liability, to enter a bond for re-exportation of the goods thus sent without authority. Such entry of bonds and 're-exportation would, as said by the court below, expose the party to liabilities, both to the government and to the shippers, which he was not obliged to assume. We are of opinion that the defendants in error in this case, on the facts found by the court below, are within the exception to article 1231 of the customs regulations above quoted, it being clearly shown that the consignment in question "was made without their consent."

The judgment of the court below is therefore affirmed.