(C. D. 329)

New England Fish Co. *v.* United States

United States Customs Court, Third Division

(Decided May 6, 1940)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Francis X. O'Donnell*, Junior Attorney, *Joseph F. Donohue*, *Richard H. Welsh*, and *Joseph E. Weil*, special attorneys), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; CLINE, J., not participating

KEEFE, Judge: In this action the importer seeks to recover certain customs duties assessed and paid upon two shipments of halibut which were reliquidated under the provision of section 521 of the Tariff Act of 1930. The plaintiff claims that the halibut were properly free under paragraph 1730 (a) and that the reliquidations were illegal, null, and void on the grounds that there was no probable cause for the collector to believe that there was fraud in the case.

It is apparent from the record before us that certain halibut were received from the fishing vessel *Tahoma* on July 23, 1934, and April 22, 1935, at Prince Rupert, B. C., and shipped to the United States as the product of American fisheries; that the merchandise was admitted without the payment of duty and the entries were liquidated under the provisions of paragraph 1730 (a).

The deputy collector at Pembina, N. Dak., in charge of the customs district including the port of Noyes, Minn., testified that he learned that an action had been instituted in the Federal Court for the forfeiture of the fishing vessel *Tahoma* from which the fish in question were delivered. After an investigation and reading a transcript of the record, he believed that the affidavits filed in connection with the importations herein were false and failed to show the true facts relative to the shipment or that they were the products of American fisheries. That therefore, within 2 years of final liquidation, reliquidation of the merchandise was ordered. The deputy collector at Pembina had originally liquidated the entries and the deputy collector at Noyes, through which port the shipments passed, had nothing to do with either the liquidation or the reliquidation of the entries.

A transcript of the record and the opinion rendered by the district court, together with the opinion of the circuit court upon appeal which affirmed the decision of the district court, were admitted in evidence and are part of the record herein. An examination of the exhibits discloses that proceedings had been instituted in the United States District Court for the forfeiture of the vessel upon the ground that the title thereof had been transferred to a Canadian firm and the

registry of the vessel had been retained in violation of law and the vessel was being operated as a fishing vessel of American registry although the Canadian firm began operating the same in May 1933. That the vessel was seized by the Coast Guard on the high seas on September 13, 1934, but was released under bond by the court September 24, 1934. The exhibits further show that judgment of forfeiture was ordered by the district court September 7, 1935, and that said judgment was affirmed by the United States Circuit Court of Appeals for the Ninth District on December 22, 1936.

The record further discloses that the *Tahoma* was a fishing schooner which had been owned and operated by an American citizen for a number of years prior to May 1933 and was of American registry; that the owner had become indebted to a Canadian firm which took over possession of the vessel in order to operate it for the benefit of its creditors. However, the American registry of the vessel was not canceled according to law and the Canadian owners, in order to further conceal the change of ownership, hired an American master as a "front" to sign all documents and clearance papers so that the vessel would conform to an American fishery. A member of the crew, a Canadian citizen, actually operated the vessel, as the American master thereof was incompetent to operate a fishing vessel of the size of the *Tahoma*. The master's share of the receipts of the vessel was received by the Canadian actually operating the vessel.

The plaintiff contends that the reliquidation of the entries and assessment of duty herein were illegal; first, because the Government failed to show that the collector had probable cause to believe there had been fraud in the invoicing and entry, or that the broker, the consignee, or the exporter, or anyone connected with the invoicing and entry of the merchandise, was guilty of fraud; second, that the deputy collector at Noyes had no knowledge of the matter and that section 521 refers to an action to be taken by the collector at the port of entry and not at some other port, even though it be the headquarters port of the customs district; third, that the decree of the district court in the forfeiture action was not signed until November 23, 1935, which was after the entries herein were made and therefore the *Tahoma* was actually a vessel of American registry, not rescinded by court action.

The plaintiff further urged that the fraud contemplated by the statute is fraud of the importer, broker, exporter, or someone who is connected with the transaction of exporting from the foreign country and importing into the United States. That inasmuch as there is nothing in the record to show that the Government had probable cause to believe that anyone of the parties hereto was implicated in the scheme of operating the *Tahoma* as an American vessel after ownership had been transferred to the Canadians, or that any of them

had been guilty of fraud, and for the additional reason that the fish were purchased as the product of American fisheries at a higher price than is paid for the product of Canadian fisheries, the reliquidation of the entries was clearly illegal.

The Government contends that probable cause to suspect the existence of fraud actually existed and that the plaintiff has not shown the merchandise to be the product of American fisheries, and that section 521 empowered the collector to reliquidate any entry if he has probable cause to believe there is fraud in the case and that Congress in wording the section intended the language to be broad enough to serve in safeguarding the revenues of the United States against all fraudulent practices, and that the statute was intended to be invoked wherever it appears to the collector that the United States had been, or was likely to be, deprived fraudulently of customs duty, and, further, that the statute is not concerned primarily with those who act fraudulently but rather with the nullification of the consequences of fraudulent acts that tend to reduce the tariff revenues.

In an attempt to substantiate the claim of the importer, the manager of the New York office of the New England Fish Co. testified as follows: That he had charge of all purchases and sales of said company and purchased the fish in question; that the plaintiff operates canneries on the Pacific Coast and ships fresh and frozen fish products to New York for distribution; that orders are placed at Prince Rupert, B. C., through his main office; that at Prince Rupert fish are bought from schooners available at the time of the receipt of the orders; that prior to July 27, 1934, fish were procured from the *Tahoma* as had been the custom for many years and had always been purchased therefrom as the product of American fisheries; that there is a difference in price between the products of American fisheries and of Canadian fisheries of 2 cents per pound, that is to say, when the price paid for the product of American fisheries is 10 cents per pound, the price paid for the same class of fish from a fishing schooner not American is 8 cents per pound, so that in view of the 2 cents duty the price to the American purchaser whether of foreign or American fisheries would therefore be the same; that the witness was informed by wire at the time the entries in question were made that the fish in question were "American," that is that they were the product of an American fishery, and entry was made on the basis of that information.

The section and paragraphs of the Tariff Act of 1930 in controversy provide as follows:

SEC. 521. RELIQUIDATION ON ACCOUNT OF FRAUD.

If the collector finds probable cause to believe there is fraud in the case, he may reliquidate an entry within two years (exclusive of the time during which a protest is pending) after the date of liquidation or last reliquidation.

PAR. 717. (a) Fish, fresh or frozen (whether or not packed in ice), whole or beheaded or eviscerated or both, but not further advanced (except that the fins may be removed): Halibut, salmon, mackerel, and swordfish, 2 cents per pound; * * *.

PAR. 1730. (a) All products of American fisheries (including fish, shellfish, and other marine animals, and spermaceti, whale, fish, and other marine animal oils), which have not been landed in a foreign country or which, if so landed, have been landed solely for transshipment without change in condition: *Provided*, That fish the product of American fisheries (except cod, haddock, hake, pollock, cusk, mackerel, and swordfish) landed in a foreign country and there not further advanced than beheaded, eviscerated, packed in ice, frozen, and with fins removed, shall be exempt from duty: * * *.

Our courts have held that fraud in entries is not restricted to acts of the owner, importer, agent, or consignee. A reliquidation on the ground of fraud is merely an assessment of duties properly due. It is neither a criminal nor a quasi-criminal proceeding and does not seek to enforce a penalty nor to work a forfeiture. It is not primarily concerned with those who act fraudulently but rather is directed toward nullifying the consequences of their acts. Therefore the action of the collector is directed toward the fraud itself regardless of the identity of the perpetrator. See *Zucca* v. *United States*, 10 Ct. Cust. Appls. 133, T. D. 38399, and *F. Vitelli & Son* v. *United States*, 38 Treas. Dec. 457, T. D. 38416.

It is, therefore, immaterial whether or not the fraud perpetrated upon the Government is within the direct knowledge of the shipper, agent, or consignee of the merchandise. The fact that the merchandise was entered free of duty by reason of its being the product of American fisheries is sufficient to authorize the collector to reliquidate the same under the provisions of section 521 when information affecting the merchandise comes to his attention and causes him to believe that there was fraud in entering the same free when, under the law, it was dutiable.

We are not impressed with the contention of the plaintiff that the collector at the port of entry is required to find probable cause for fraud. The statute provides: "If the collector find probable cause." The discovery of the fraud by the collector in charge of the collection district, who liquidated the original entries, is sufficient under the statute, as the action by any collector having authority to liquidate or reliquidate entries is clearly contemplated thereby.

Paragraph 1730 (a) provides that all products of American fisheries shall be exempt from duty. One of the tests of an American fishery has been held to be the registry of the vessel. However, the registry of the vessel from which fish were taken is merely evidence tending to prove that the vessel is actually an American fishery. When it is established, as it has been here, that such vessel is not an American fishery, notwithstanding its American registry, the plaintiff is precluded from relying on such evidence. It was clearly established

that the vessel ceased being an American fishery in May 1933. The *Tahoma* was seized by the Coast Guard for violation of the Commerce Laws on September 13, 1934. Clearly the contention that the vessel remained an American fishery until the decree and judgment of forfeiture was entered is without basis, as forfeiture of a vessel for false registry relates back to the time of seizure. See the *Kathryn*, 50 Fed. (2d) 193.

For the reasons stated we find that the collector had probable cause to believe that there was fraud in the case and the reliquidation under the provisions of section 521 is held to be in accordance with law. Judgment will therefore be entered in favor of the Government.