(C. D. 1025)

WATERBURY LOCK & SPECIALTY CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 2, 1946)

*Puckhafer, Rode & Rode* (*Jacob L. Klingaman* and *John D. Rode* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before OLIVER, COLE, and LAWRENCE, Judges

OLIVER, Presiding Judge: The merchandise before us, exported from Germany and entered at the port of Boston, consists of small metal disks measuring approximately one-fourth inch in diameter and one-eighth inch in thickness. The center has been pierced, leaving a hole about one-sixteenth inch in diameter, reamed on both sides. The outer surface of the disk is smooth but the edges have been beveled.

These disks were entered at 35 per centum ad valorem as lock washers under paragraph 330 of the Tariff Act of 1930. This was clearly erroneous. They were classified as washers at six-tenths of 1 cent per pound under the same paragraph and the entry was liquidated at this rate on August 26, 1940. Thereafter, on November 20, 1940, the entry was reliquidated and duty was assessed at 1 cent each and 50 per centum ad valorem as parts, finished or unfinished, of articles valued above 20 cents per dozen and designed to be carried on or about the person (cigar or cigarette lighters) under paragraph 1527 (c) (2), on the authority of *Greenberg & Josefsberg* v. *United States,* 2 Cust. Ct. 50, C. D. 86, affirmed in 28 C. C. P. A. 138, C. A. D. 135. The above reliquidation was made by virtue of the provisions of section 521, Tariff Act of 1930, reading as follows:

SEC. 521. RELIQUIDATION ON ACCOUNT OF FRAUD.

If the collector finds probable cause to believe there is fraud in the case, he may reliquidate an entry within two years (exclusive of the time during which a protest is pending) after the date of liquidation or last reliquidation.

Plaintiff challenges the reliquidation as untimely, contending that the burden is on the Government to establish actual fraud; that it has failed to sustain this burden and has not even established that there was probable cause to believe fraud existed in the case.

The Government contends that there is ample evidence that there was probable cause to believe fraud existed in the case and that, therefore, the collector's action in reliquidating was proper under the provisions of section 521. Defendant has gone further, however, and has moved to dismiss the protest on the ground that the Waterbury Lock & Specialty Co. is not a proper party plaintiff.

Beyond the above questions and on the merits, plaintiff contends that while the entire importation of 150,000 of these disks was used to make sparking wheels for lighters, they are not dutiable as parts of such pocket lighters as are provided for in paragraph 1527 (c) (2), but are properly dutiable at 80 per centum ad valorem under paragraph 1527 (d) as:

Stampings * * * and other materials of metal * * * suitable for use in the manufacture of any of the foregoing articles in this paragraph * * * [pocket lighters].

On the question of whether or not the collector could properly reliquidate this entry, section 514 of the Tariff Act of 1930 provides in part that:

* * * all decisions of the collector * * * and his liquidation or reliquidation of any entry * * * shall, upon the expiration of sixty days after the date of such liquidation * * * be final and conclusive upon all persons * * * unless the importer, consignee, or agent of the person paying such charge or exaction * * * shall, within sixty days after, but not before such liquidation * * * file a protest in writing with the collector * * *

Section 521, as hereinbefore set forth, permits the collector to reliquidate an entry at any time within 2 years if he "finds probable cause to believe there is fraud in the case."

The facts upon which the collector acted may be briefly noted as follows:

Subsequent to the original liquidation herein, an investigation of importations of these metal disks disclosed what the grand jury for the southern district of New York, in an indictment (exhibit 3) filed in the United States district court on October 9, 1940, described as a conspiracy to violate title 19, sections 1591 and 1593 (a) and (b) of the United States Code. Among the alleged conspirators named in the indictment were Buchmann Manufacturing Co., Inc., Buchmann Spark-Wheel Corp., Rudolf Buchmann, and one Erich Schmidt. The indictment recited, among other parts of said alleged conspiracy, that:

It was further a part of said conspiracy that the defendants ERICH SCHMIDT; RUDOLF BUCHMANN and the BUCHMANN MANUFACTURING Co. INC. would cause certain merchandise, to wit, approximately *150,000 metal sparking-wheels* used as parts of cigar and cigarette lighters, the exact amount being to the Grand Jurors unknown, to be entered and introduced into the commerce of the United States by means of certain false and fraudulent invoices and declarations, which said invoices and declarations would relate to the said merchandise and would

be false and fraudulent in that *they would describe the said merchandise as "steel washers"*, whereas in truth and in fact, as the said defendants then and there well knew, the said merchandise would not consist of steel washers, but would consist of metal sparking-wheels to be used as parts of cigar and cigarette lighters; and which said invoices and declarations would be false and fraudulent in that *they would describe the exporter of the said merchandise as a certain person named Franz Balek*, whereas in truth and in fact, as the defendants then and there well knew, the exporter of the said merchandise would be the defendant RUDOLF BUCHMANN; and which *said invoices and declarations would be false and fraudulent in that they would describe the importer of the said merchandise as the Waterbury Lock & Specialty Co., Milford, Connecticut*, whereas in truth and in fact, as the defendants then and there well knew, the said merchandise would be imported for the defendants ERICH SCHMIDT and the BUCHMANN MANUFACTURING Co., INC. [Italics supplied.]

The above allegation refers to "approximately 150,000 metal sparking-wheels used as parts of cigar and cigarette lighters" which would be described as "steel washers" and further that the importer would be falsely described as the "Waterbury Lock & Specialty Co., Milford, Connecticut, whereas in truth and in fact * * * the said merchandise would be imported for the defendants ERICH SCHMIDT and the BUCHMANN MANUFACTURING Co., INC." The merchandise before us consists of 150,000 pieces, was described as "steel washers," and the Waterbury Lock & Specialty Co. of Milford, Conn., was described as the importer.

To the indictment (exhibit 3), the defendants pleaded guilty on or about February 20, 1941, and were sentenced variously to fines or imprisonment (exhibit 4).

On October 24, 1940, John J. Kahler, customs agent at Boston, notified the collector of customs at Boston of the result of an investigation had in connection with the merchandise now before us, being Boston Consumption Entry 3146 of September 8, 1939 (exhibit 1), enclosing and incorporating therein by reference a report from the supervising customs agent at New York (exhibit 2). In requesting the reliquidation of this entry, the collector was notified (exhibit 1):

You will also notice in the enclosure that the lighter wheels, imported as washers, were to be ultimately utilized as parts of cigarette lighters by the Buchmann Manufacturing Company of New York, and that it was because the Buchmann Manufacturing Company was involved in a violation of Section 592 of the Tariff Act during the years 1936 to 1939 that arrangements had been made abroad for one "Balek" of Vienna to ship the 150,000 wheels to the Waterbury Lock & Specialty Company, Milford, Conn., through Boston, Mass., so that neither the name of Rudolf Buchmann in Vienna nor the Buchmann Manufacturing Company in New York would appear in the transaction.

The foregoing most certainly gave to the collector, as it would to any cautious and prudent businessman, reason "to believe that there is fraud in the case," and therefore has brought this case squarely within the provisions of section 521 permitting the collector to reliqui-

date an entry at any time within 2 years if he "finds probable cause to believe there is fraud in the case."

Counsel, however, contends that the plaintiff, Waterbury Lock & Specialty Co., not being an actual party to any alleged fraud, the collector may not invoke the provisions of section 521 and that the original liquidation must stand. We cannot agree with this contention. In *New England Fish Co.* v. *United States*, 4 Cust. Ct. 230, C. D. 329, wherein the authority of a collector to reliquidate under the provisions of section 521 was involved, this court said (Keefe, J., p. 234):

Our courts have held that fraud in entries is not restricted to acts of the owner, importer, agent, or consignee. A reliquidation on the ground of fraud is merely an assessment of duties properly due. It is neither a criminal nor a quasi-criminal proceeding and does not seek to enforce a penalty nor to work a forfeiture. It is not primarily concerned with those who act fraudulently but rather is directed toward nullifying the consequences of their acts. Therefore the action of the collector is directed toward the fraud itself regardless of the identity of the perpetrator. See *Zucca* v. *United States*, 10 Ct. Cust. Appls. 133, T. D. 38399, and *F. Vitelli & Son* v. *United States*, 38 Treas. Dec. 457, T. D. 38416.

It is, therefore, immaterial whether or not the fraud perpetrated upon the Government is within the direct knowledge of the shipper, agent, or consignee of the merchandise. * * *

Plaintiff contends that to avail itself of the provisions of section 521, the Government must establish actual fraud and that the mere showing of "probable cause to believe there is fraud in the case" is not sufficient to support the reliquidation, citing *Vitelli & Son* v. *United States*, 250 U. S. 355, T. D. 38179.

The *Vitelli* case involved the construction of section 21 of the act of June 22, 1874 (18 Stat. 186), which provided in part, that:

* * * whenever duties * * * shall have been liquidated and paid * * * such settlement of duties shall, after the expiration of one year from the time of entry, in the absence of fraud * * * be final and conclusive upon all parties.

The court very properly held "that the remedial purpose of the statute was to protect the citizen from the unlimited power to reliquidate and the uncertainties affecting commercial transactions resulting from the existence of such power," and "* * * thus in the interest of the citizen to circumscribe the power to the instances specified in order that *uncertainty as to the finality of customs entries* might be removed and the security of commercial transactions be safeguarded." [Italics supplied.]

The concluding provision of section 521 of the 1922 act provided for the first time:

* * * If the collector finds probable cause to believe there is fraud in the case, he may reliquidate within two years after the date of entry, or after the date of liquidation when liquidation is made more than ten months after the date of entry.

In the 1930 act, section 521 of the 1922 act was repealed and the provision for reliquidation above was reenacted in the following language as section 521 of the Tariff Act of 1930:

If the collector finds probable cause to believe there is fraud in the case, he may reliquidate an entry within two years (exclusive of the time during which a protest is pending) after the date of liquidation or last reliquidation.

We find nothing ambiguous in the language of the present statute and nothing therein inconsistent with the position of the court in the *Vitelli* case, *supra*. There is now a definite time limit within which the collector may reliquidate and the "uncertainty as to the finality of customs entries" has been removed. If the collector finds probable cause to believe there is fraud in the case, he may reliquidate an entry at any time within 2 years. Had the Congress intended to limit the right of the collector to cases where actual fraud had been established it could have so provided as it did in the act of 1874. If it had been the intent of Congress to limit the fraud to the actual importer or entrant it could have so stated. Instead it elected to use the present language which is broad and comprehensive.

The Government has assumed the burden of establishing that the collector found probable cause to believe there was fraud in this case. The evidence so submitted by the Government is substantial and has not been contradicted by the plaintiff.

After the case was originally submitted, counsel for the plaintiff filed a motion to set aside the submission and incorporate into the record a copy of a notice of transmittal of a warrant of a "full and unconditional" pardon, said notice being dated January 31, 1946, and directed to Erich Schmidt, one of the defendants named in the indictment hereinbefore referred to. This motion was granted by a majority of this court (Judge Lawrence, dissenting) and the case resubmitted accordingly. The pardon referred to in said notice of transmittal does not in any way alter the evidence of fraud appearing in this record at the time the collector found reasonable cause to believe there was fraud in the case. Erich Schmidt is not a party to this action and the fact that he was subsequently the subject of executive clemency is entirely immaterial to the issues here presented.

Since it seems clear that the collector had before him ample information to cause him in good faith to believe there was fraud in the case, we find the reliquidation to have been proper.

The Government moves to dismiss the protest because (1) the plaintiff is not the proper party under section 514 of the Tariff Act of 1930; (2) because plaintiff has no interest in the action and has not been aggrieved by the action of the Government; and (3) because the real party in interest has agreed to discontinue and abandon all protests contesting the appropriate rate on any and all of its importations.

In support of its motion, defendant contends that section 514

specifically names only three classes of litigants who may file protests; namely, the importer, the consignee, or the agent of the person paying the charge or exaction.

In this case the plaintiff, the Waterbury Lock & Specialty Co., is designated in the invoice as the purchaser and in the declaration on the entry as the actual owner for customs purposes of the merchandise. Ordinarily this would be sufficient to determine the right to file a protest, but defendant contends that it is always the province of the court to determine whether the plaintiff is, in fact, the party in interest, citing *United States* v. *Fletcher et al.*, 231 Fed. 326, wherein it was held that a court may look beyond the names of the parties to a suit and ascertain the real party in interest from the facts as they appear in the record.

The case cited by defendant has no application here. That was a suit in equity brought in the name of the United States for the purpose of canceling and vacating a patent issued to one Fletcher for a quarter-section of land, alleging fraud in procuring the patent. The court was compelled to look beyond the names of the parties to ascertain the real parties in order to determine whether laches was a bar to the further prosecution of the suit. The court stated that the principle that the United States is not barred by any laches of its officers is applicable only to a suit brought in its capacity as a sovereign government to enforce a public right or to assert a public interest, and held that laches could be asserted since "the government is only a nominal complainant party, has no real interest in the litigation, and * * * it allowed its name to be used for the sole benefit of * * * a private person."

The record here shows (exhibit 5, affidavit of J. Edward Peterson, president of Waterbury Lock & Specialty Co.) that the Buchmann Manufacturing Co., Inc., gave to the plaintiff the money to pay for the imported merchandise and duties thereon.

The merchandise in this case was consigned to the brokers, McLaughlin & Freeman, who made consumption entry and they, by their attorney, J. E. Montgomery, executed the declaration of nominal consignee or agent in which they declared the Waterbury Lock & Specialty Co. to be the actual owner of the merchandise for customs purposes. The declaration by the importer required in connection with entries of dutiable merchandise from Germany (T. D. 49878) was duly executed by the Waterbury Lock & Specialty Co. by its treasurer.

In *Wheeler* v. *United States*, 15 Treas. Dec. 101, T. D. 28740 (G. A. 6717), this court (then the Board of General Appraisers) stated:

While a person may justly claim that he is not the importer of goods which may have been consigned to him without his authority, and which he declines to receive or to enter on this account, nevertheless *where he does receive the goods*

*and makes entry of them, he would consequently be liable for duty,* although the goods may have been presented to and not purchased by him. *Dodge* v. *United States* (65 C. C. A., 604; 131 Fed. Rep., 849; T. D. 25609); *United States* v. *O'Neill* (129 Fed. Rep., 909; 64 C. C. A., 341; T. D. 25313); *Baldwin* v. *United States* (113 Fed. Rep., 217; 51 C. C. A., 174). [Italics supplied.]

Also in *Colpas* v. *United States*, 17 Treas. Dec. 280, T. D. 29663 (G. A. 6891), it was held that where goods are shipped to this country without authority from the ultimate consignee, the latter may refuse to recognize the shipment or to make entry of such goods and thus relieve himself from liability to pay the duties.

The Waterbury Lock & Specialty Co., as importers of record, instead of refusing the shipment as unauthorized, accepted the merchandise and caused entry to be made, thereby becoming liable for any duties. Under section 514 protest could have been filed by either the broker or by the Waterbury Co. On the face of the entry papers as presented to the collector the Waterbury Co. is a proper party to file protest. The brokers did not relieve themselves from liability for any additional or increased duties as provided for in section 485 (d) since, although they did declare at the time of entry that they were not the actual owner of the merchandise and furnished the name of plaintiff as the owner (section 485 (d) (1) (2)), they failed to produce an owner's declaration, as prescribed by section 485 (d) (3).

While the brokers are liable for any increased or additional duties, nevertheless the Waterbury Co. also is liable. Under the circumstances it cannot be said that the Waterbury Co. has no interest in the proceedings. We therefore are of opinion that the Waterbury Lock & Specialty Co. is a proper party to file protest.

In support of the motion to dismiss, certain letters (collective exhibit 6 for identification) were offered in evidence by counsel for the defendant and objection thereto was sustained. This offer was later renewed by counsel, and the court reserved the right to change its ruling as to the admissibility of these letters, upon consideration of the motion to dismiss, exception being allowed to either party. These letters purport to show an agreement by the alleged party in interest (Buchmann Manufacturing Co.) to discontinue and abandon all protests contesting the rate of duty on any and all of its importations. In our opinion such evidence is immaterial and cannot in any way affect the right of a proper party to file protest or the jurisdiction of this court to determine the issue raised as to the legal rate of duty to be assessed on the merchandise in question. The Government is entitled to the legal duty but certainly not to illegal duties. We now affirm our ruling sustaining plaintiff's objection to the admissibility of these letters.

In our opinion the grounds for the motion to dismiss the protest are not well taken and the motion is denied.

The issue presented for our consideration on the merits is whether these disks as imported are properly dutiable as parts, finished or unfinished, of cigar lighters designed to be carried on or about or attached to the person under the provisions of paragraph 1527 (c) (2), Tariff Act of 1930, as classified, or as "Stampings * * * and other materials of metal * * * suitable for use in the manufacture of * * *" such cigar or cigarette lighters under paragraph 1527 (d).

The imported articles were not finished sparking wheels. They had, however, been cut out of metal to the shape and size of the finished articles; the edges had been beveled, and a hole punched in the center and reamed on both sides. All that remained to be done after importation was the cutting of the ridges on the outer edge and the tempering of the finished product. The finished wheel was described as No. 5 and was said to be "standard" for all types of lighters, whether cheap or expensive, and whether for pocket or table lighters.

There is nothing in this record that indicates that the imported articles were ever used for any purposes other than as sparking wheels. There is testimony that the sparking wheels made from them were not confined to lighters designed to be carried on the person. As imported, they are dedicated to use as sparking wheels but not as part of any particular article.

Sparking wheels were before this court and our appellate court and were held to be properly dutiable as parts of cigar or cigarette lighters designed to be carried on the person. *United States* v. *Kriss Kross Corp.*, 24 C. C. P. A. 133, T. D. 48607. The court pointed out, however, that the record in that case did not show that these sparking wheels were "appropriate for use other than as parts of cigar or cigarette lighters." The record in the present case definitely establishes that the sparking wheels made from the imported disks are standard in size and are used in all types and styles of cigar and cigarette lighters, cheap and expensive, pocket and table types, and also on certain types of gas lighters (illustrative exhibit C).

There is nothing in the appearance or construction of the imported articles that dedicates them to use as a part of any particular article. In *Harding Co.* v. *United States*, 23 C. C. P. A. 250, T. D. 48109, our appellate court said:

Running through most of the decisions pertinent to the inquiry here, it is made clear that before imported merchandise shall be regarded as parts of an article *the identity of the individual article must be fixed with certainty.* [Italics quoted.]

In *Davies Turner & Co.* v. *United States*, 13 Cust. Ct. 190, C. D. 893, this court stated:

It has almost consistently been held that a part must have been manufactured and dedicated solely for use on a particular article *and to be useful for no other purpose.* [Italics quoted.]

The metal disks here before us have no special characteristics that dedicate them solely for use as parts of the particular class of cigar and cigarette lighters provided for in paragraph 1527 (c) (2). On the contrary, the record establishes that they actually were used and were appropriate for use in other articles.

It appears clear, however, that these imported articles are suitable for use in the manufacture of cigar and cigarette lighters designed to be worn on apparel or carried on or about or attached to the person and fall squarely within the provisions of paragraph 1527 (d) for "materials of metal * * * suitable for use in the manufacture of any of the foregoing articles * * *" [pocket lighters].

In *United States* v. *American Bead Co. et al.*, 9 Ct. Cust. Appls. 27, T. D. 37873, the subject matter was metal snaps, clasps, and swivels, and the issue was whether they were properly dutiable as parts of chain or as "Stampings * * * and other materials of metal * * * suitable for use in the manufacture of any of the foregoing articles in this paragraph * * *" [paragraph 356, Tariff Act of 1913]. This language is identical with that before us in the present case. The court there said (p. 29):

* * * An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture.

Materials may be suitable for a specific purpose without being wholly or chiefly used for that purpose. The words "suitable for use" do not imply or require chief use. *United States* v. *Lorsch & Co.*, 8 Ct. Cust Appls. 109, T. D. 37222.

On the entire record we find the imported articles to be properly dutiable at 80 per centum ad valorem under the provision of paragraph 1527 (d) for "Stampings * * * and other materials of metal * * * suitable for use in the manufacture" of the particular kind of lighters provided for in paragraph 1527 (c) (2). That claim in the protest is therefore sustained. Judgment will be rendered accordingly.