The judgment of the United States Customs Court is *affirmed.*

UNITED STATES *v.* WATERBURY LOCK & SPECIALTY CO. (No. 4562)[1]

---

[1] C. A. D. 384.

132

United States Court of Customs and Patent Appeals, January 27, 1948

*Paul P. Rao*, Assistant Attorney General (*Alfred A. Taylor, Jr.* and *Joseph F. Donohue*, special attorneys, of counsel), for the United States.
*John D. Rode* for appellee.

[Oral argument October 7, 1947, by Mr. Donohue and Mr. Rode]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This appeal from the judgment of the United States Customs Court, First Division, C. D. 1025, is limited to a review of the question

of whether that court erred in denying the Government's motion to dismiss the protest filed by the Waterbury Lock & Specialty Co. on the ground that it was an improper party plaintiff which had no right or authority to file such protest under section 514 of the Tariff Act of 1930.

The record discloses that approximately 150,000 small unfinished metal spark wheels for cigar or cigarette lighters imported from Germany were entered at the port of Boston. The merchandise was there assessed at six-tenths of 1 cent per pound under the first provision of paragraph 330 of the Tariff Act of 1930 which provides for that rate of duty on the importation of washers of wrought iron or steel. The entry was accordingly liquidated by the collector on August 26, 1940, and no protest was filed against this liquidation.

On November 20, 1940, the collector, finding probable cause to believe there was fraud in the case, reliquidated the entry under the authority granted to him by section 521 of the Tariff Act of 1930, and assessed the merchandise at the rate of 1 cent each and 50 per centum ad valorem under paragraph 1527 (c) (2) of the same act, as parts, finished or unfinished, of cigar or cigarette lighters designed to be carried on or about the person and valued at above 20 cents per dozen pieces.

The collector made a demand of the Waterbury Lock & Specialty Co. for payment of the additional and increased duties resulting from the reliquidation, and in so doing stated, "You may, if you so desire, submit payment through your broker, McLaughlin & Freeman." The Waterbury Company, however, paid to the collector the additional and increased duties demanded by him under the reliquidation.

The protest here involved was filed against this reliquidation by the Waterbury Lock & Specialty Co. and its claim therein was sustained by the trial court, which found the imported articles to be properly dutiable at 80 per centum ad valorem under the provisions of paragraphs 1527 (d) as stampings and other materials of metal suitable for use in the manufacture of the particular kind of lighters provided for in paragraph 1527 (c) (2) of the Tariff Act of 1930.

Appellant does not challenge that finding but contends that appellee, the importer, was not entitled to recover because it had no interest in the matter, not having been aggrieved by the action of the collector, and because the real party in interest had agreed to discontinue and abandon all protests contesting the appropriate rate on any and all of its importations.

The facts which led the collector to believe that there was fraud in the case and which caused him to reliquidate the original entry are set forth in the exhibits submitted by appellant. They establish that subsequent to the original liquidation hereinbefore described an investigation of the importation of the disks in question by the grand

jury resulted in an indictment filed in the United States District Court for the Southern District of New York on October 9, 1940.

That indictment charged one Erich Schmidt, Rudolf Buchmann, Buchmann Manufacturing Co., Inc., and the Buchmann Spark Wheel Corporation with conspiracy to violate title 19, sections 1591 and 1593 (a) and (b) of the United States Code and thereby defraud the Government of its lawful revenue.

Briefly summarized, the indictment alleged that in carrying out the conspiracy the parties hereinbefore described caused the merchandise to be entered and introduced into the commerce of the United States by means of certain fraudulent invoices and statements, in that such parties falsely described the disks in the invoice and declarations as "steel washers" when they well knew that the merchandise did not consist of steel washers but consisted of metal spark wheels to be used as parts of cigar and cigarette lighters; that the importer was falsely and fraudulently described as the "Waterbury Lock & Specialty Co., Milford, Connecticut," whereas in truth and in fact the merchandise was imported for the defendants Erich Schmidt and the Buchmann Manufacturing Co., Inc.

To that indictment the defendants pleaded guilty on or about February 20, 1941, and were sentenced variously to fines or imprisonment.

The involved merchandise was imported on August 21, 1939, under a bill of lading made out to "order" and endorsed to the firm of McLaughlin & Freeman, Customs Brokers, 156 State Street, Boston. The invoice accompanying the merchandise designated the Waterbury Lock & Specialty Co. of Milford, Conn., as the purchaser thereof. That company delivered the invoice to McLaughlin & Freeman who proceeded to make a consumption entry of the goods in their own name, as consignee, under the provisions of section 484 of the Tariff Act of 1930.

In filing that entry, the brokers also filed not only customs Form 17938 duly executed by the Waterbury Lock & Specialty Co., which contained certain information required to be given by an importer of merchandise from Germany under the provisions of T. D. 49878, but also a declaration, as consignee, pursuant to section 485 of the Tariff Act of 1930, which so far as pertinent reads:

SEC. 485. DECLARATION.

(d) A consignee shall not be liable for any additional or increased duties if (1) he declares at the time of entry that he is not the actual owner of the merchandise, (2) he furnishes the name and address of such owner, and (3) within ninety days from the date of entry he produces a declaration of such owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury may prescribe. Such owner shall possess all the rights of a consignee.

In compliance with the first two provisions of the statute, the brokers declared that they were not the actual owners of the merchandise, and they furnished the name and address of the Waterbury Lock & Specialty Co. as such owner. McLaughlin & Freeman did not, however, within 90 days from the date of entry produce a declaration of the owner, as required by the third provision of the statute.

Appellant contends that appellee was not a proper party because it did not sign and cause to be filed the owner's declaration described in the third provision of the statute, and therefore had neither the rights nor the liabilities of a consignee, "for the law makes the filing of this certificate a condition precedent to the exercise of the rights of an importer."

Section 485 (d) provides a method by means of which McLaughlin & Freeman might have relieved themselves of liability for any additional or increased duties on the imported merchandise. It does not necessarily follow, however, that the failure on their part to file the oath of ownership, as required by the third provision of the statute, relieved the Waterbury Lock & Specialty Co. of liability in the transaction. See *United States* v. *O'Neill et al.*, 129 Fed. 909, T. D. 25313.

Basing its action on the ground that appellee was named in the invoice as the importer of the goods, and that it had received and caused them to be entered, the trial court held that on the face of the entry papers presented to the collector, appellee had the liability of a consignee and was a proper party to file the protest here in issue.

In support of that holding the court cited *Wheeler* v. *United States*, 15 Treas. Dec. 101, T. D. 28740, and *Colpas* v. *United States*, 17 Treas. Dec. 280, T. D. 29663, wherein the doctrine was stated that a person, by refusing to receive the shipment as unauthorized, may justly maintain that he is not the importer of merchandise consigned to him without his authority; but where he receives such merchandise and causes it to be entered and introduced into the commerce of the United States, he thereby becomes liable for any duties lawfully assessed thereon.

It was correctly held in *Colpas* v. *United States, supra*, as recited in the headnote, that

The consignee of imported merchandise named in an invoice is deemed for tariff purposes to be the owner of the merchandise and liable as such for the lawful duties assessed.

The underlying reason for that rule of law was stated in *Baldwin et al.* v. *United States*, 113 Fed. 217, 218, to the following effect:

The government is not called upon to hunt up any ultimate consignee, when there is a primary consignee to whom the goods are sent, and who himself presents the invoice, makes the entry, receives the bill of lading, and gets the goods; thus being himself their "importer." Knox v. Devens, 5 Mason, 482, Fed. Cas. No. 7,905. * * *

Letters written by the Buchmann Manufacturing Co., Inc. and signed by Erich Schmidt and another, were offered in evidence by appellant, Collective Exhibit 6, on its motion to dismiss the protest herein. An objection thereto was sustained by the court on the ground that such evidence was immaterial.

These letters were offered for the purpose of proving that the alleged party in interest, the Buchmann Manufacturing Co., Inc., had agreed to discontinue and abandon all protests contesting the rate of duty on any and all of its importations and to assign to the United States any refunds which may arise in any manner on any of its importations.

In that connection we quote the following pertinent excerpts from the record:

Presiding Judge OLIVER. Do any of those letters or all of them refer to these specific entries from Waterbury Lock & Specialty Company, or do they state in their substance that the Waterbury Lock & Specialty Company's importation is their importation?

Mr. FITZGIBBON. None of these letters do. This is not offered in relation to the proving of fraud; it is offered as a foundation for a motion to dismiss. I'm going to move to dismiss the protest on the ground that the Waterbury Lock & Specialty Company, although named as importer, was not actually the importer and that if the Waterbury Lock & Specialty Company is to be treated as the agent of either Erich Schmidt or the Buchmann Manufacturing Company, then these letters which offer to withdraw protest or abandon protest are just as binding upon the agent as they are on the principal.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Presiding Judge OLIVER. We will take that motion under advisement and I assume that both parties will address some part of their briefs to that motion.

Mr. FITZGIBBON. I have renewed my offer in evidence of Collective Exhibit 6 for identification on my motion.

Presiding Judge OLIVER. Are the entries referred to in Collective Exhibit 6 for identification any of the entries now before the court?

Mr. FITZGIBBON. No, sir.

The letters in question were addressed to the United States Attorney at New York in an offer to settle an action which the Government proposed to institute against the Buchmann Manufacturing Co., Inc. and Erich Schmidt for the recovery of more than $150,000 arising out of claims for duties on the importation of spark wheels.

Appellant contends: "That the offer was accepted by the Government is not denied by appellee's attorney, although the record shows he was silent when counsel for the Government asked him to concede that the offer was accepted."

In view of the fact that appellant, as hereinbefore described, failed to establish that the subject matter of the letters related to the subject matter here in issue, there was no error in the ruling of the trial court that such evidence was not material and could not be admitted.

Appellant's Exhibit 5 consists of an affidavit executed by J. Edward

Peterson, president of the Waterbury Lock & Specialty Co., plaintiff below, in which he states:

That the Buchmann Manufacturing Company gave the money for the washers and duty to the Waterbury Lock & Specialty Company and it paid for said washers and duty; that at no time was he or the Waterbury Lock & Specialty Company the owner of the merchandise and neither he nor it have any interest in the outcome of any action to recover any part of duty paid on said merchandise and in the event a recovery is made and money is received by him or it on account of same it would be turned over and paid to the Buchmann Manufacturing Company.

That statement establishes the fact that in paying the charge for the additional or increased duties assessed by the collector, appellee was acting as the agent of the Buchmann Manufacturing Co., Inc.

Were it not for the element of conspiracy to defraud the Government, it is clear that under the authorities hereinbefore cited, and under the explicit terms of section 514, *supra*, appellee, having received and entered the imported merchandise, and having paid the duties assessed thereon by the collector, would have the right to file the protest herein.

To summarize the situation in the instant case, we note that because of a fraud perpetrated against the Government of the United States, the collector in his original liquidation of the entry herein erroneously classified the merchandise and failed to make a proper and sufficient charge to cover the amount of duty imposed by law. Upon finding that there was probable cause to believe there was fraud in the case, he reliquidated the entry, and in so doing made a charge for additional or increased duties in excess of the regular amount of duty authorized by law. Appellee paid the duty so assessed by the collector, and filed the protest herein for the purpose of recovering the duty paid by it in excess of the amount of duty that was lawfully due.

While appellee was no stranger to the transaction, there is nothing in the record to show that it was named as an actual party to the fraud. Appellant contends, however, that:

The facts in the record in this case show that the Waterbury Company was not the importer at all but was named as importer in a conspiracy to defraud the Government out of its lawful revenues. The indictment in evidence herein, Exhibit 3, charges that the invoice and declaration were false and fraudulent in that they described the importer of the merchandise as the Waterbury Lock and Specialty Co., when in fact, the merchandise was being imported for Erich Schmidt and the Buchmann Manufacturing Company. The defendants named in that indictment pleaded guilty, thereby admitting that the Waterbury Lock and Specialty Co. was not the importer.

The law is well settled that where the collector reliquidates an entry on the ground of fraud, his action in so doing is not presumptively correct to the extent of requiring the importer to assume the

burden of disproving the fraud. *F. Vitelli & Son* v. *United States,* 250 U. S. 355.

Appellee had the right under section 514, *supra,* and the authorities hereinbefore cited, to resist the result of the reliquidation and to challenge the correctness of the assessment of duty by the collector at the rate of 1 cent each and 50 per centum ad valorem under paragraph 1527 (c) (2), *supra,* and to establish that the merchandise was properly dutiable at 80 per centum ad valorem under the provisions of paragraph 1527 (d) as held by the trial court. Accordingly, appellee was a proper party plaintiff in the court below.

In view of that conclusion, it is deemed unnecessary to present in this opinion and pass upon other points raised by the arguments of counsel, and the judgment of the United States Customs Court, for the reasons hereinbefore stated, is *affirmed.*

BLAND, Judge, sat during the argument of this case, but resigned before the opinion was prepared.