**No. 59276.**—Buegeleisen & Jacobson, Inc. *v.* United States, protests 227676–K and 227983–K (New York).

OLIVER, Chief Judge: This case relates to merchandise described on the invoices as "Tortoise shell picks." The collector regarded the articles as parts of stringed instruments and classified them under the provision in paragraph 1541 (a) of the Tariff Act of 1930 for "Musical instruments and parts thereof, not specially provided for," carrying a dutiable rate of 40 per centum ad valorem. Plaintiff, in its protests, alleges "that such merchandise is dutiable at 17½% under paragraph 1538 pursuant to T. D. 52476." Paragraph 1538 of the Tariff Act of 1930, as modified by T. D. 52373, supplemented by T. D. 52476, so far as pertinent, reads as follows:

Manufactures of mother-of-pearl or shell, or of which these substances or either of them is the component material of chief value, not specially provided for; and shells and pieces of shells engraved, cut, ornamented, or otherwise manufactured * * *

At the time of trial, counsel stated that plaintiff claims the merchandise is "properly dutiable as a manufacture of shell, at 17½ per cent under paragraph 1538, as modified by the trade agreements in T. D. 52476." Plaintiff's brief, differing from counsel's oral statement, states plaintiff's claim as follows:

The plaintiff claims that said merchandise is not subject to duty under Paragraph 1541 but is dutiable under provisions of Paragraph 1538 as "shells and pieces of shell cut, cut, engraved, ornamented or otherwise manufactured at 17½% ad valorem as modified by the General Agreement on Tariffs and Trade."

The divergence in plaintiff's claim, as expressed at the hearing and in the brief, is insignificant in view of our disposition of the case, as developed, *infra*.

The article in question, as disclosed by an examination of the sample (plaintiff's exhibit 1), is readily recognized as a pick, generally used by musicians in playing the mandolin, the guitar, and related fretted stringed instruments. The pick in question is triangular in shape, with the sides slightly elliptical, each side being approximately 1½ inches in length. It is admittedly composed of tortoise shell.

The plaintiff corporation, engaged in the sale of musical instruments and parts, offered testimony through its treasurer. The witness' testimony is to the effect that the pick under consideration is exclusively used by musicians in playing fretted stringed instruments and that it is not dedicated for use with any particular instrument but is "used most commonly with the guitar, the banjo, and the mandolin." He described the manner of its use as follows (R. 13):

It is generally held in the one hand while the other hand is used to pick out the tune on the strings, scale of the instrument, and depending upon the rhythm of the tune that is being played is how the performer uses the pick.

Defendant introduced the testimony of a professional musician who identified the merchandise in question as "a tortoise shell pick used commonly in guitars, banjos, mandolins." Asked to state whether picks, such as the article in question, are essential to play fretted stringed musical instruments, the witness replied (R. 22):

I want to state that I have played with orchestras as a musician where there was a necessity for the guitar, banjo, or mandolin player to have to use one of these to get through his rhythm. Otherwise he could strum it with his hand, but actually to play with an orchestra to get through you have to use a pick.

In further testimony, the witness stated that "soloists can do as well without a pick," and he referred to a professional artist who "can play without a pick, because he plays a certain classical guitar, and he doesn't have to use the hard rhythm that they use in commercial work." The absolute need for a pick by musicians playing stringed instruments in commercial orchestral work was emphasized by the witness in the concluding statement of his testimony, when he stated:

With constant playing it [the pick] has to be used on any hard steel instrument of that type. I will say this in fairness, that these stringed instruments, I could take a guitar with steel strings and practice maybe 20 minutes to a half hour softly, so nobody will hear me, but to use it for professional work, or get it through with a big orchestra, you must use a pick. You have no alternative.

Plaintiff's claim for classification under paragraph 1538, *supra*, is based on the premise that the picks in question "are not parts but are in fact accessories." To support that contention, counsel, in their brief, have cited *Waterbury Lock & Specialty Co.* v. *United States*, 17 Cust. Ct. 87, C. D. 1025; *United States* v. *The Harding Co.*, 21 C. C. P. A. 307, T. D. 46830; *The Harding Co. et al.* v. *United States*, 23 C. C. P. A. 250, T. D. 48109; *Bassick Co.* v. *United States*, 66 Treas. Dec. 1141, Abstract 29563; and *Henry A. Wess, Inc.* v. *United States*, 67 Treas. Dec. 1072, Abstract 29882. Each of those cases was based on an individual set of facts and invoked a principal of law that distinguishes all of them from the present case, as the following brief analysis of each discloses.

The *Waterbury Lock & Specialty Co.* case, *supra*, turned on a finding that the metal disks involved therein were susceptible of use in all types and styles of cigar and cigarette lighters, as well as in certain types of gas lighters. The articles were, therefore, held to be properly classifiable as *material* suitable for use in a wide variety of articles, as claimed by the importer, rather than as parts of a certain class of cigar and cigarette lighters provided for in paragraph 1527, as classified by the collector.

The *Harding Co.* and *The Harding Co. et al.* cases, *supra*, involved so-called brake linings. Plaintiffs' claim for classification as parts of automobiles was denied upon a finding that the merchandise was mere material, commercially capable of various uses, and not identifiable with certainty as brake linings for automobiles.

In the *Bassick Co.* case, *supra*, the merchandise consisted of small wooden caster wheels which were not necessary to the completion of any article of furniture and were not integral, constituent, or component parts without which an article of furniture could not function as such. The collector's classification of the merchandise as parts of furniture was, therefore, overruled, and the importer's claim for classification as manufactures of wood was sustained.

The *Henry A. Wess, Inc.*, case, *supra*, involved certain flexible steel shafts, which served as power transmitting media, and were not integral parts of either an electric motor on the one hand, or a concrete surfacing machine on the other. The court held that, under such circumstances, the articles were not parts of any mechanism or machine. The merchandise was held to be properly classifiable under the residuary provision for manufactures of metal, not specially provided for.

In this case, the picks under consideration are definite articles that are dedicated to an exclusive use and that serve a specific purpose. They are essential for the practical and efficient use of fretted stringed instruments in the function of such instruments to produce music.

As early as 1904, the classification of mandolin picks was the subject of tariff litigation. *C. B. Richard & Co.* v. *United States*, 8 Treas. Dec. 113, T. D. 25488. That case arose under the Tariff Act of 1897 and involved the same issue as that presented herein. The collector's classification of the merchandise, as parts of musical instruments, was sustained on a factual finding that the articles "are indispensable parts of mandolins."

On the basis of record herein, the same conclusion applies to the picks in question. The combined testimony of the witnesses who appeared for both parties fairly establishes that the articles under consideration are essential in order to play certain fretted stringed instruments and that such instruments, without the use of picks, would be practically unserviceable. Defendant's testimony, with reference to the professional soloist who plays "a certain classical guitar" without using a pick, must be viewed, in the light of the present record, as relating to an unusual or an occasional use of a particular kind of stringed instrument. The condition, therefore, has no effect toward the ultimate disposition of the issue before us.

The pick in question (exhibit 1, *supra*) is not a mere aid nor an accessory. It is an indispensable adjunct, essential for the musician to obtain the required volume and the adequate tone of music, necessary in the practical use of certain fretted stringed instruments. That the use of the picks in question is not confined to an individual instrument has no significance. The provision in paragraph 1541 (a), *supra*, invoked by the collector, is a generic classification that embraces several types of musical instruments and their parts. One of the classes of musical instruments included therein is the fretted stringed instrument, which requires the use of a pick to serve the purpose for which such stringed instruments are manufactured.

For all of the reasons hereinabove set forth, we hold the picks in question to be parts of stringed instruments, and, as such, they are properly classifiable under paragraph 1541 (a), *supra*, as assessed by the collector.

Defendant's brief discusses several cases which involved different kinds of articles, each of which was held to be classifiable as a part of a finished product. Careful consideration has been given to each of the cases cited by defendant, and

we find that none is on all fours with the present case. It is deemed unnecessary to review any of them.

The protest is overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.